**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**OAKES FARMS, INC., OAKES FARM**
**OP, LLC, and SOUTH FLORIDA**
**PRODUCE LLC,**

                                     **Case No.: 2:25-cv-1126-SPC-NPM**

       **Plaintiffs,**

**v.**

**STEVEN A. VENEZIANO, JR.,**
**Individually, VENEZIANO FARMS,**
**LLC, and VENEZIANO PROPERTY**
**MANAGEMENT, LLC,**

       **Defendants.**

_____/

## <u>DEFENDANTS' ANSWER TO AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES</u>

Defendants, Steven A. Veneziano Jr., Veneziano Farms, LLC, and Veneziano Property Management, LLC (collectively "Defendants"), by and through their undersigned counsel, hereby answer the Amended Complaint [D.E. #41] filed by Plaintiffs, Oakes Farms, Inc., Oakes Farms OP, LLC, and South Florida Produce LLC (collectively "Plaintiffs), and assert affirmative defenses thereto as follows:

1. Defendant Steven A. Veneziano, Jr. ("Veneziano") was the CEO and primary operator of the Plaintiff entities, and he had nearly unfettered access to accounts, information, and administration. Veneziano exploited it all.

**<u>Answer:</u>** Defendants deny the allegations set forth in Paragraph 1.

2.      Specifically, Veneziano—individually and through his Defendant entities—stole *millions* of dollars from Plaintiffs by manipulating invoices, forging checks, wiring funds to his personal accounts, and diverting funds payable to Plaintiffs into his personal accounts.

**Answer**: Defendants deny the allegations set forth in Paragraph 2. Veneziano never stole from Plaintiffs, Veneziano stole for Plaintiffs.

3.      Veneziano also charged more than $500,000 of personal charges to Plaintiffs' corporate credit cards.  To be clear, this is not a case where an employee charged a questionable meal or family outing—no, Veneziano paid for gambling trips to Las Vegas and subscriptions to pornographic websites.

**Answer**:  Defendants deny the allegations set forth in Paragraph 3.

4.      Not satisfied with his current vehicle, Veneziano also purchased a 2023 Lincoln Navigator for his personal use using Plaintiffs' funds.

**Answer**: Defendants admit Veneziano bought a 2023 Lincoln Navigator for his personal use, but deny that there was anything improper with the purchase.

5.      All the while, Veneziano would use his position of authority within Plaintiffs to cover his tracks by falsifying internal records and assuring coworkers that his actions were authorized (they were not).

**Answer**: Defendants deny the allegations set forth in Paragraph 5.

6.      Veneziano would then siphon some of these stolen funds into both his

personal account and the bank accounts of Veneziano Farms, LLC and Veneziano Property Management, LLC.

**Answer**: Defendants deny the allegations set forth in Paragraph 6.

7.     Veneziano also purchased multiple real properties with the stolen funds through Veneziano Property Management, LLC, sold them, and kept the profits.

**Answer:** Defendants deny the allegations set forth in Paragraph 7.

### PARTIES, JURISDICTION, AND VENUE

8.     This is an action for damages exceeding $75,000, exclusive of interest, costs, and attorneys' fees.

**Answer**:  Defendants admits that this purports to be an action for damages, but denies the sufficiency of same.8.

9.     Plaintiff Oakes Farms, Inc. ("Oakes Farms") is a Florida for profit corporation with its principal place of business in Naples, Florida.  Therefore, for purposes of diversity of citizenship, Oakes Farms is deemed to be a citizen of Florida.

**Answer**:  Defendants admit the allegations set forth in Paragraph 9.

10.     Plaintiff Oakes Farm OP, LLC ("Oakes Farm OP") is a Florida limited liability company with its principal place of business in Immokalee, Florida.  Oakes Farm OP's members are citizens of Florida; therefore, Oakes Farm OP is deemed to be a citizen of Florida for purposes of diversity of citizenship.

**Answer**:  Defendants admit the allegations set forth in Paragraph 10.

11.     South Florida Produce, LLC ("South Florida Produce") is a Florida limited liability company with its principal place of business in Immokalee, Florida. The members of South Florida Produce are citizens of Florida.  Hence, South Florida Produce is deemed to be a citizen of Florida for purposes of diversity of citizenship.

**Answer**:  Defendants deny the allegations set forth in Paragraph 11. During the Relevant Period, Steven Veneziano and his wife were the sole members of South Florida Produce. *See Exhibit A*.  An Oakes Farms attorney removed the Venezianos as the sole Managing Members, without their knowledge or consent, approximately one month after federal agents executed search warrants at several of the Oakes Entities, including the principal address for South Florida Produce.  *See Exhibit B.*

Francis Oakes (hereinafter, "Alfie Oakes") directed an attorney to transfer South Florida Produce from his name and his wife, Deanne Oakes, name to Steven Veneziano and his wife on or about January 23, 2023, at the time of the filing of the 2023 Annual Report. *See Exhibit C.*

12.     Veneziano is an individual domiciled in California, is over the age of 18, and is otherwise *sui juris*.

**Answer**: Defendant admits the allegations set forth in Paragraph 12.

13.     At all times material to this Amended Complaint, however, Veneziano was a citizen and resident of Florida.  Veneziano engaged in substantial business and

tortious acts within the state of Florida.  Therefore, under Florida Statutes Section 48.193, the Court has personal jurisdiction over Veneziano.

**Answer**:  Defendants deny the allegations set forth in Paragraph 13.

14.    Defendant Veneziano Farms, LLC ("Veneziano Farms") is an inactive Florida limited liability company with its principal place of business in Naples, Florida. Veneziano Farms's members are California citizens; thus, Veneziano Farms is deemed to be a citizen of California for purposes of diversity of citizenship.

**Answer**: Defendants admit the allegations set forth in Paragraph 14.

15.    As a Florida limited liability company, the Court has personal jurisdiction over Veneziano Farms.

**Answer**: Defendants admit the allegations set forth in Paragraph 15.

16.    Defendant Veneziano Property Management, LLC ("Veneziano Property Management") is an inactive Florida limited liability company with its principal place of business in Naples, Florida.  Veneziano Property Management's members are California citizens, and, as a result, Veneziano Property Management is deemed to be a citizen of California for purposes of diversity of citizenship.

**Answer**: Defendants admit the allegations set forth in Paragraph 16.

17.    As a Florida limited liability company, the Court has jurisdiction over Veneziano Property Management.

**Answer**:  Defendants admit the allegations set forth in Paragraph 17.

18.    This Court has subject-matter jurisdiction over this matter under 28 U.S.C. Section 1332 in that there is complete diversity between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00.

**Answer**:    Defendants admit this Court has subject-matter jurisdiction over this matter.

19.    Pursuant to 28 U.S.C. Section 1391, venue is proper in this District because Veneziano Farms and Veneziano Property Management maintain their principal operations in Collier County, Florida, and all actions and/or omissions giving rise to this Amended Complaint occurred in Collier County, Florida.  As to Defendant Veneziano, venue is proper under 28 U.S.C. Section 1391(b)(3).

**Answer**:  Defendants admit venue is proper.

### GENERAL ALLEGATIONS

20.    Oakes Farms is one of the largest independently owned agribusiness operations in Florida.

**Answer**: Defendants do not have knowledge sufficient to either admit or deny the allegations set forth in Paragraph 20. It is unclear how many affiliated entities, legitimate and straw, comprise the Oakes Farms Entities. Alfie Oakes, the owner of Oakes Farms, directed and/or facilitated the creation of numerous straw entities to employ sophisticated schemes to defraud the United States government, insurance companies, business partners, and civil litigants adverse to Plaintiffs. For example,

Alfie Oakes appointed a straw owner of Oakes Food and Distribution Services to conceal his true ownership to obtain a Department of Defense ("DoD") contract for fraudulent purposes. Alfie Oakes also appointed a straw owner of Farmer Joe's, a farmers' market-style grocery store in Cape Coral, Florida, to conceal his ownership interest from Publix Super Markets, as his ownership interest would be a breach of his agreement not to compete with the super market chain. Additionally, Alfie Oakes appointed his brother Eric Oakes and Oakes' business partner's wife, to act as straw owners of the Organic General Store in Naples, which is a clothing store at Food and Thought 1 Grocery Store, for the purpose of filing fraudulent applications for government relief funds through the Coronavirus Food Assistance Program ("CFAP").

This straw scheme was ordinary and customary business for Oakes Farms to defraud numerous government programs for the benefit of Oakes Farms and its owner, Alfie Oakes. Alfie Oakes also directed straw companies be used to acquire millions of dollars in fraudulent crop insurance claims for the benefit of Oakes Farms, himself, and his coconspirators. As such, it is impossible to ascertain which entities Plantiffs are referring to.

21.    Oakes Farms, in conjunction with its subsidiaries and related entities (collectively the "Oakes Farms Entities"), maintains a diversified portfolio of services that reach a global market and include farming, packing, shipping, retail

markets, and wholesale food distribution.

**Answer**: Defendants do not have knowledge sufficient to either admit or deny the allegations set forth in Paragraph 21.

22.    Veneziano began working for Oakes Farms in 2013 and quickly began to rise the ranks of Oakes Farms and, by association, Oakes Farms's related entities.

**Answer**: Defendants admit the allegations set forth in Paragraph 22.

23.    By 2020, Veneziano effectively served as the *de facto* President and Chief Executive for Oakes Farms, Oakes Farm Op, South Florida Produce and all Oakes Farms Entities.

**Answer**: Defendants deny the allegations set forth in Paragraph 23.

24.    This position of power included unfettered access to the bank accounts for Oakes Farms, Oakes Farm OP, and South Florida Produce.

**Answer**: Defendants deny the allegations set forth in Paragraph 24.

25.    Veneziano's desired new lavish lifestyle soon outgrew his actual earning means.

**Answer**: Defendants deny the allegations set forth in Paragraph 25.

26.    To help pay for his lavish lifestyle, Veneziano exploited his role in the Oakes Farms Entities and used his access and authority to steal millions of dollars in funds, equipment, and assets from Plaintiffs.

**Answer**: Defendants deny the allegations set forth in Paragraph 26.

Veneziano never stole from Plaintiffs, he stole for the Plaintiffs and Alfie Oakes. On August 14, 2025, Veneziano pled guilty in federal court in the Middle District of Florida to conspiracy to commit wire fraud and conspiracy to commit money laundering. Veneziano took responsibility for fraudulently obtaining millions of dollars in funds from the CFAP government relief program. Veneziano was paid to file the fraudulent applications on behalf of his coconspirators, including Alfie Oakes, but he did not receive the illicit funds. Some funds were used to purchase gold for Alfie Oakes and other funds were used to pay Oakes Farms' expenses and obligations.

During Veneziano's tenure with Oakes Farms, Veneziano, Plaintiffs and Alfie Oakes engaged in numerous fraudulent schemes, at the direction of Alfie Oakes, for the benefit of Plaintiffs, Alfie Oakes, Veneziano, and other coconspirators. These criminal schemes include, but are not limited to, government contract fraud, government relief program fraud, crop insurance fraud, wire fraud, tax evasion, and money laundering.

27.    To do so, Veneziano engaged in various schemes to defraud Oakes Farms, Oakes Farm OP, and South Florida Produce of millions of dollars in funds, equipment, and other assets.

**Answer**:  Defendants deny the allegations set forth in Paragraph 27.

28.    Over the course of his tenure with the Oakes Farms Entities, Veneziano

stole or defrauded millions of dollars from the Plaintiffs.

**Answer**:   Defendants deny the allegations set forth in Paragraph 28. Veneziano did not steal or defraud millions of dollars from the Plaintiffs, he stole for the Plaintiffs. Over the course of his tenure with Oakes Farms, Veneziano and his coconspirators stole or defrauded millions of dollars from the federal government, insurance companies, and others at the direction of Alfie Oakes for the benefit of Oakes Farms, its owner, and themselves.

29.    Veneziano engaged in a variety of different schemes to siphon large sums of cash from Oakes Farms for himself while concealing evidence of the missing funds. These schemes involved the following: (i) manipulation of accounting records, (ii) diversion of deliveries to third party retailers, and (iii) pocketing cash that was meant for specific orders.

**Answer**:   Defendants deny the allegations set forth in Paragraph 29.

30.    The resulting damages to Plaintiffs and the other Oakes Farms Entities not only include the funds that Veneziano and his affiliated entities stole but also the cost that it has taken to unwind the transactions and to accurately account for their books.

**Answer**: Defendants deny the allegations set forth in Paragraph 30.

31.    In one of these schemes, Veneziano would facilitate the sale of produce on behalf of Oakes Farm OP or South Florida Produce to produce retailers.

**Answer**: Defendants deny the allegations set forth in Paragraph 31.

32.    Veneziano would then receive payment for these orders in cash and then manipulate Plaintiffs' internal accounting records to conceal the outstanding receivable balance, keeping the cash payments for himself and clearing the outstanding accounts receivable.

**Answer**:  Defendants deny the allegations set forth in Paragraph 32.

33.    For example, from November 25, 2023, through November 1, 2024, Veneziano facilitated the sale of $1.8 million worth of produce from Oakes Farm OP to Valencia Produce (a wholesale supplier in Atlanta, Georgia).

**Answer**:  Defendants are without knowledge sufficient either to admit or deny the allegations set forth in Paragraph 33.

34.    Veneziano instructed the owner of Valencia Produce, to pay Oakes Farm OP's invoices in cash.

**Answer**:  Defendants admit the allegations set forth in Paragraph 34. Plaintiffs often required cash payments from smaller business entities as a course of regular business. Valencia Produce was a vegetable stall with a single owner in the Atlanta farmer's market in Forest Park, Georgia.

35.    Veneziano then received the cash and used it for his own personal uses.

**Answer**:   Defendants deny the allegations set forth in Paragraph 35.

36.    To conceal the record of this outstanding receivable from Valencia

Produce within Oakes Farm OP's accounting system, Veneziano edited the customer account associated with the invoice to list a sham customer account or other Oakes Farms Entities that he effectively had control over, such as Rainbow Produce of Gainesville, Inc. or Marjon Specialty Foods.

**Answer**:  Defendants deny the allegations set forth in Paragraph 36.

37.   Veneziano would then edit the sham invoice total to zero dollars and deliver the produce meant for the sham invoice to Valencia Produce.

**Answer**:   Defendants deny the allegations set forth in Paragraph 37.

38.   That way, Valencia Produce would receive the ordered produce, but Oakes Farm OP's accounting records would have no record of Valencia Produce's order and payment.

**Answer**:  Defendants deny the allegations set forth in Paragraph 38.

39.   For example, on or around March 30, 2024, Veneziano altered the invoice for a March 28, 2024, Valencia Produce order for 22 pallets (Order # 64179) to be delivered to non-party Rainbow Produce of Gainesville, Inc. instead of Valencia Produce.

**Answer**:  Defendants are without knowledge sufficient either to admit or deny the allegations set forth in Paragraph 39.

40.   Veneziano pocketed the cash received from Valencia Produce for the order ($12,399), had the produce delivered to Valencia Produce, and then later altered non-

party Rainbow Produce of Gainesville, Inc.'s records to reflect a zero balance on the altered invoice.

**Answer**: Defendants deny the allegations set forth in Paragraph 40.

41.     Through this manipulation, it was Plaintiffs, not non-party Rainbow Produce of Gainesville, who were harmed.

**Answer**: Defendants deny the allegations set forth in Paragraph 41.

42.     Veneziano would also accept orders, direct the customers to pay in cash, and then edit invoices and other internal records to reflect that the produce was unsuitable for sale and destroyed rather than delivered.

**Answer**: Defendants admit the allegations set forth in Paragraph 42. Veneziano would edit invoices and other internal records at the direction of Alfie Oakes to facilitate various crop insurance fraud and tax evasion schemes for the benefit of Plaintiffs, himself, and his coconspirators. Plaintiffs and Alfie Oakes financially benefitted the most from these fraudulent schemes.

43.     Veneziano would then receive the cash, retain it for personal use, and have the produce delivered, all the while Oakes Farm OP's internal records would show that the produce was marked as spoilage.

**Answer**: Defendants deny the allegations set forth in Paragraph 43.

44.     For example, on January 25, 2024, Veneziano altered the invoice for a December 5, 2023, purchase of 23 pallets of produce by Valencia Produce (Order  #

62624), to be sent to the dump or destroyed, rather than properly delivered.

**Answer**:  Defendants do not have knowledge sufficient to admit or deny the specific allegations in Paragraph 44.  However, Plaintiffs frequently employed this tactic, altering invoices and records to show the product was dumped or destroyed, at the direction of Alfie Oakes, to commit tax evasion and crop insurance fraud for the benefit the Oakes Farm Entities.

45.  Veneziano embezzled the cash received for the order, had the produce delivered to Valencia Produce, and modified Oakes Farm OP's internal records to show that the produce was destroyed.

**Answer**: Defendants deny the allegations set forth in Paragraph 45. Veneziano stole for the Plaintiffs, not from the Plaintiffs.

46.  Similarly, Doug Specialties, a farmer's market in Pompano Beach, Florida, purchased produce from South Florida Produce on a recurring basis, and South Florida invoiced Doug Specialties for the sales.

**Answer:** Defendants admit the facts as set forth in Paragraph 46, however deny the allegation that Veneziano embezzled any cash from Plaintiffs or others.

47.  In or around December 20, 2023, Veneziano directed the owner of Doug Specialties to pay the invoices to Veneziano in cash, which the customer obliged, and the proceeds of which Veneziano retained for his own personal use. Veneziano then instructed South Florida Produce management to modify South Florida

Produce's internal accounting records to show a zero balance on the Doug Specialty invoices.

**Answer**: Defendants deny the allegations set forth in Paragraph 47. Veneziano would edit invoices and other internal records at the direction of Alfie Oakes to facilitate various crop insurance fraud and tax evasion schemes for the benefit of Plaintiffs, himself, and his coconspirators.

48. Upon Veneziano's departure from Oakes Farms and all Oakes Farms Entities in November 2024, South Florida Produce records showed a receivables balance of $729,000 for Doug Specialties. South Florida Produce subsequently learned that Doug Specialties paid this balance in cash, but South Florida Produce never received any of the cash payment toward that balance.

**Answer**: Defendants have insufficient evidence to admit or deny the allegations set forth in Paragraph 48.

49. Through this scheme of altering invoices, Veneziano stole millions of dollars from Plaintiffs, including approximately $6.2 million from Oakes Farm OP alone between April 2023 and December 2024.

**Answer:** Defendants deny the allegations set forth in Paragraph 49.

50. Veneziano's accounting record manipulation further makes it difficult to truly grasp how much he stole from Plaintiffs.

**Answer**: Defendants deny the allegations set forth in Paragraph 50.

51. Based upon readily available data, Veneziano manipulated millions of dollars, with discrepancies continuing to be found by Plaintiffs.

**Answer**: Defendants admit that Veneziano manipulated accounting records in the amount of millions of dollars, and are without knowledge sufficient to either admit or deny the remaining allegations set forth in Paragraph 51. At the direction of Alfie Oakes and for the benefit of Oakes Farms, Veneziano manipulated millions of dollars of invoices to commit various fraud schemes against the federal government, insurance companies, and others. Defendants do not have knowledge sufficient to admit or deny that discrepancies continue to be found or what data is "readily available".

52. Indeed, many millions of dollars more than continue to be investigated and uncovered, each of which Veneziano was the listed salesperson on almost all of these open invoices.

**Answer**: Defendants do not have knowledge sufficient to admit or deny the allegations set forth in Paragraph 52.

53. The Oakes Farms Entities, including the Plaintiffs, utilized an enterprise resource planning software called "Famous."

**Answer**: Defendants deny that all Oakes Farms Entities, including the Plaintiffs, used Famous.

54. Famous is a business management system that integrates into a single shared

database the core processes of the Oakes Farms Entities, including finance, sales orders, product receipts, shipping, supply chain info, and growing operations including any manufacturing.

**Answer**: Defendants deny the allegations set forth in Paragraph 54.

55.   Through his position with the Oakes Farms Entities, Veneziano was able to manipulate the Famous system and freely alter sales orders without any oversight.

**Answer**:   Defendants deny the allegations set forth in Paragraph 55. The manipulation of the Famous system was at the request and direction of Alfie Oakes to perpetrate numerous fraudulent schemes.

56.   The Famous files show that Veneziano received product paid for by the Plaintiffs, subsequently sold the products, pocketed the cash received, and marked the products as paid without any documentation of the pricing or payment.

**Answer**: Defendants deny the allegations set forth in Paragraph 56.

57.   Veneziano then manipulated the Famous files to cover his tracks and to further lack pricing details and were disabled in a way to prevent any accurate payment tracking.  For example, during the period of January 1, 2024, to November 30, 2024, the Famous files reflect numerous shipments between $30,000 and $50,000 that were delivered, yet no payments were recorded for them.

**Answer**: Defendants deny the allegations set forth in Paragraph 57.

58.   Millions of dollars of produce was shipped with no valid record of invoicing

or reconciliation.

**Answer**: Defendants admit the allegations set forth in Paragraph 58. Millions of dollars of produce was shipped by Oakes Farms, at the direction of Alfie Oakes, with no valid record of invoicing or reconciliation to conduct crop insurance fraud and tax evasion for the benefit of Oakes Farms Entities.

59. For example, Veneziano—through his position with the Oakes Farms Entities—would direct Plaintiffs to purchase and pay for wholesale produce from a third-party vendor but would then divert the delivery of the produce to local retailers.

**Answer**: Defendants deny the allegations set forth in Paragraph 59.

60. The local retailers then paid Veneziano in cash for the produce delivery, Veneziano altered Plaintiffs' internal records to show that the produce was received, and Veneziano pocketed the cash from the third-party retailer.

**Answer**: Defendants deny the allegations set forth in Paragraph 60.

61. Between December 2023 and April 2024, Veneziano directed Oakes Farms OP to purchase tomatoes from a third-party tomato grower named Gargiulo for $1,568,610.65. Veneziano then directed Garguilo to deliver the tomatoes to Doug Specialties rather than Oakes Farm OP.

**Answer**: Defendants deny the allegations set forth in Paragraph 61.

62. However, Veneziano pocketed the cash that Doug Specialties paid for the tomatoes, effectively having Oakes Farm OP purchase the tomatoes but allowing

Veneziano to keep the proceeds.

**Answer**: Defendants deny the allegations set forth in Paragraph 62.

63.   There are missing cash receipts from various entities and corresponding deposits in or around that time frame into Veneziano's bank account.

**Answer**: Defendants deny the allegations set forth in Paragraph 63.

64.   Veneziano then deposited this cash into his personal bank accounts ending in 5031 and 1917, along with Veneziano Farms bank account ending in 6355.

**Answer**: Defendants deny the allegations set forth in Paragraph 64.

65.   Veneziano altered at least 283 invoices in the Famous system to conceal his theft and fraud, totaling at least $4,212,581.34 in stolen funds.

**Answer**:   Defendants do not have knowledge sufficient to admit or deny the allegations set forth in Paragraph 65.  Veneziano admits that he altered thousands of Famous Systems entries, at the direction of Alfie Oakes and for the benefit of Plaintiffs, coconspirators, and other straw owners, to commit crop insurance fraud, insurance carrier fraud, country of origin fraud against the United States government and others, tax evasion, bank fraud, money laundering, and multiple government relief program frauds. For example, the "organic farm" that Oakes Farms and the Food and Thought stores advertises is located on Sanctuary Road in Naples. However, acccording to the USDA Organic Integrity Database, Oakes Organics' certification was suspended on March 14, 2019.  Famous entries were altered to

make it appear that the seeds being planted were organic.

66.   From at least June 3, 2024, through November 1, 2024, on a roughly weekly basis, Veneziano withdrew cash and directed a South Florida Produce employee to withdraw cash from South Florida Produce's bank accounts for wholesale tomato purchases from a third-party farmer, Heriberto Estrada ("Estrada"). Veneziano represented to Plaintiffs' employees that Estrada did not accept payment by check and, therefore, needed to be paid in cash.

**Answer**: Defendants deny the allegations set forth in Paragraph 66.

67.   In addition to having Plaintiffs' employees withdraw funds from South Florida Produce's account(s), Veneziano would pay Estrada and related parties with checks from Oakes Farm OP's bank accounts.

**Answer**: Defendants deny the allegations set forth in Paragraph 67.

68.   As a result, Veneziano would pocket the cash from South Florida Produce while Oakes Farms Entities were paying for the produce twice for the purchases from Estrada—once with the misappropriated cash withdrawals and a second time from the checks Veneziano directed to be cut from Oakes Farm OP.

**Answer**: Defendants deny the allegations set forth in Paragraph 68.

69.   Approximately $960,000 in cash was withdrawn in connection with the Estrada tomato purchases between June 3, 2024, and November 1, 2024. For example, on July 11, 2024, Veneziano caused $37,243.00 to be withdrawn from the

South Florida Produce account in furtherance of this scheme. Similarly, on August 1, 2024, Veneziano caused an additional $55,000.00 to be withdrawn from the South Florida Produce account under the guise of paying Estrada for tomatoes.

**Answer**: Defendants deny the allegations set forth in Paragraph 69.

70. Veneziano deposited this cash into his personal bank accounts ending in 5031 and 1917, along with Veneziano Farms bank account ending in 6355.

**Answer**: Defendants deny the allegations set forth in Paragraph 70.

71. In other words, Veneziano again directed Plaintiffs to pay for a product while he pocketed the proceeds.

**Answer**: Defendants deny the allegations set forth in Paragraph 71.

72. After becoming the *de facto* executive for the Plaintiffs in 2020, Veneziano began forging checks to deposit Oakes Farms funds into Veneziano Farms' bank account.

**Answer**: Defendants deny the allegations set forth in Paragraph 72. Alfie Oakes directed the Oakes Farms Accounting Department to transfer money between Oakes Farms and Veneziano Farms since Veneziano Farms inception in 2018. Oakes Farms secretary, Heather Gleason, had access to the Veneziano Farms bank accounts and had wire authority. She transferred funds regularly with the approval of Alfie Oakes. Veneziano Farms was created as a straw entity for Oakes Farms to apply for fraudulent funds under government relief programs, crop insurance fraud, tax

evasion, and money laundering. After 2020, Veneziano Farms was used to commit CFAP and DoD fraud. Defendants benefitted from these schemes, however Alfie Oakes and Oakes Farms derived the vast majority of the criminal proceeds from these fraudulent transactions.

73.    Specifically, from May 1, 2020, till June 20, 2020, Veneziano issued four checks totaling $607,000 from Oakes Farms account ending in 1080 to be deposited into Veneziano Farms bank account.  Veneziano then forged Oakes Farms authorized signatory on the checks.

**Answer**:  Defendants deny the allegations set forth in Paragraph 73.  These transfers, and others, were specifically authorized by Alfie Oakes. *See **Exhibit D.***

74.  These transfers were made without any discernible or legitimate business purpose.

**Answer**: Defendants deny the allegations set forth in Paragraph 74.

75.    Furthermore, between June 3, 2024, and October 23, 2024, Veneziano forged at least 29 checks, totaling $7,687,241.87, from Oakes Farm OP's account ending in 8813.

**Answer**: Defendants deny the allegations set forth in Paragraph 75.

76.    These checks ranged from $50,000 to $1,000,000 and were issued to a variety of entities.  While some of these checks may have been for legitimate business purposes, Veneziano's signed these checks without the proper authorization

from Plaintiffs, which further demonstrates Veneziano's pattern of deceit.

**Answer**: Defendants deny the allegations set forth in Paragraph 76.

77.   Plaintiffs' authorized signatories never authorized Veneziano to use his signature

**Answer**:  Defendants deny the allegations set forth in Paragraph 77.

78.   Again exploiting his position and access to Plaintiffs' bank accounts, Veneziano transferred millions of dollars from Plaintiffs' company accounts to his personal and Veneziano Farms's bank accounts.

**Answer**: Defendants deny the allegations set forth in Paragraph 78.

79.   For example, on November 22, 2021, Veneziano wired $995,000 from Oakes Farm's bank account into his personal bank account ending in 5031.  This transfer was made without any discernible or legitimate business purpose.

**Answer**: Defendants deny the allegations set forth in Paragraph 79. Oakes Farms' secretary Heather Gleason, at the direction of owner Alfie Oakes, wired $995,000 to Veneziano's personal account and additional money from Robert Eddy, Alfie Oakes business partner with Fruit Dynamics, LLC and Lightening Strikes Bowling Lanes, for the purpose of construction of Farmer Joes, a farmers market grocery store, in Cape Coral. *See Exhibit E*.  According to bank records, the transactions were as follows:

11/22/21: Oakes Farms deposits $995,000.00 into Veneziano's personal account

ending in 5031.

11/22/2: Robert Eddy deposits $500,000.00 into Veneziano's personal account ending in 5031.

11/22/21: Veneziano withdraws and transfers $1,000,0000.00 to GNS Holdings, LLC's account ending 5503.

11/23/21: Veneziano withdraws and transfers $495,000.00 to GNS Holdings, LLC's account ending in 5503. Veneziano transferred this money the next day due to daily transfer limits.

11/23/21: Veneziano wires two payments of $444,337.05 and $1,000,000.00 to Compass Construction, Inc. for construction of Farmer Joe's.

80. Veneziano then immediately withdrew $1,000,000 from the account ending in 5031. This transfer was made without any discernible or legitimate business purpose.

**Answer**: Defendants deny the allegations set forth in Paragraph 80. According to bank records, the from March 26, 2021 until January 19, 2022, Veneziano deposited a total of $6,339,917.80, Deanne Oakes deposited a total of $6,501,000, and Alfie Oakes deposited $2,000,000 into the GNS Holdings Chase bank account ending in 5503 for the construction of Farmer Joe's.

Alfie Oakes hired a straw owner for Farmer Joe's to conceal his ownership interest so he would not violate his agreement with Publix Supermarket not to

compete against the grocery food chain. The ownership interest of GNS Holdings was as follows: Veneziano owned 45%, Alfie Oakes owned 51%, and Glen Lee Snyder was given the remaining 4% for his role as the straw owner. Despite Veneziano's significant labor investment and cash contributions to the construction of Farmer Joe's, named after Veneziano's grandfather, Alfie Oakes altered documents to steal Veneziano's ownership interest in the company and transfer it to a private trust.

81.    On December 30, 2021, Veneziano also transferred $150,000 from Oakes Farm OP's account ending in 8808 to Veneziano Farms's account ending in 6355. This transfer was made without any discernible or legitimate business purpose.

**Answer**: Defendants do not have sufficient knowledge to admit or deny the allegations set forth in Paragraph 81.

82.    Upon information and belief, Veneziano then transferred the funds from the Veneziano Farms account to his personal account or another entity's account over which Veneziano exercised control.

**Answer**: Defendants deny the allegations set forth in Paragraph 82. Heather Gleason, Alfie Oakes' secretary at Oakes Farms, had access to the Veneziano Farms bank accounts and had wire authority. Alfie Oakes had ultimate control over this account, authorizing deposits and withdrawals.

83.    Also, on August 14, 2023, an Oakes Farms Entity account ending in 2991

received $598,581.14. This amount then immediately left the account via separate wires for $200,000 and $398,581.13. Upon information and belief, these wires went to accounts held by Veneziano and Veneziano Farms.

**Answer**: Defendant does not have knowledge sufficient to admit or deny the allegation set forth in Paragraph 83.

84.    Furthermore, between October 2023 through October 2024, Veneziano also transferred a total of $1.7 million from South Florida Produce to his personal bank account, portraying these as purported investments or reimbursement payments. For example, on October 2, 2023, Veneziano caused the transfer of $100,000 from South Florida Produce to his personal bank account, labeling it as an "Investment in Veneziano." This transfer was made without any discernible or legitimate business purpose.

**Answer**:  Defendants deny the allegations set forth in Paragraph 84.

85.    Veneziano also wired roughly $1,070,000 from company accounts directly to himself with vague memo descriptions like "reimbursement for cash purchase."

**Answer**: Defendants deny the allegations set forth in Paragraph 85. Veneziano incurred a tremendous amount of personal expense, via cash payments, that required him to be reimbursed during his tenure at Oakes Farms.  At the direction of Alfie Oakes, Veneziano paid protestors, to stage fake rallies and protests against candidates politically opposed to Alfie Oakes. In addition, at the direction of Alfie Oakes, and

for the benefit of Plaintiffs, Veneziano paid for unpermitted construction work at 925 New Harvest Road, Immokalee, FL and 837 East Main Street, Immokalee, FL.

86.    Lest there be any confusion, Veneziano held no direct interest in Plaintiffs or any of the Oakes Farms Entities.

**Answer**: Defendants deny the allegations set forth in Paragraph 86. Steven Veneziano and his wife Amy Veneziano were the sole members of Florida South Produce. *See Exhibit A*.  Alfie Oakes directed an attorney to transfer ownership of South Florida Produce from Alfie Oakes and his wife, Deanne Oakes, to Steven Veneziano and Amy Veneziano on or about January 23, 2023. The text messages corroborating this exchange are attached and incorporated as *Exhibit C*.  Steven Veneziano opened a bank account for South Florida Produce after the apparent transfer and he and his wife were the sole signatory authority on this business account.

87.    Veneziano was also not permitted to make any such investments *in himself* or to take such draws—to which Veneziano had no contractual entitlement. This was, quite simply, embezzlement of the worst kind.

**Answer**:  Defendants deny the allegations set forth in Paragraph 87.

88.  This is, unfortunately, just the tip of the iceberg.  As detailed above, Veneziano altered Plaintiffs' internal records to hide his theft and fraud, and Plaintiffs continue to pick up the pieces and uncover even more schemes through

which Veneziano utilized the Oakes Farms Entities as his personal piggy bank.

**Answer**: Defendants deny the allegations set forth in Paragraph 88. Veneziano altered Plaintiff's internal records to steal and defraud the federal government, insurance companies, and others at the direction of Alfie Oakes and for the benefit of Oakes Farms and his coconspirators.

89. Plaintiffs are still in the process of reviewing its internal records to comprehend the full scope of Veneziano's theft and fraud, and the forensic accounting and auditing remains ongoing.

**Answer**: Defendants do not have knowledge sufficient to admit or deny the allegations set forth in Paragraph 89.

90. Veneziano also used his *de facto* Chief Executive position to use Plaintiffs' credit cards, including South Florida Produce credit card accounts ending in 4951, 5748 and 6054 (the "South Florida Produce Credit Cards") to directly pay for many of his personal expenses, including expensive meals, high stakes gambling trips for him, his family, and his friends to Las Vegas, hotel rooms, purchases from Amazon.com, a deposit on a Tesla, and subscriptions to models on the adult website OnlyFans.

**Answer**: Defendants deny the allegations set forth in Paragraph 90. The South Florida Produce credit card was guaranteed by Veneziano's social security number and personal credit score. Multiple Oakes Farms employees used Veneziano's

personal Discover, American Express, and Bank of America credit cards for millions of dollars from 2022 through 2024 for business and other purposes. This was necessary due to the straw companies being unable to receive the credit backing of Oakes Farms.

91. As with the previous clarification, Veneziano did not have permission to be expensing such personal expenses to the Oakes Farms Entities nor did Veneziano have any ownership interest in the Oakes Farms Entities that would permit him to take draws from the entities.

**Answer**: Defendants deny the allegations set forth in Paragraph 91.

92. Veneziano's personal expenses on the South Florida Produce Credit Cards totaled over $500,000.

**Answer**: Defendants deny the allegations set forth in Paragraph 92.

93. Veneziano's personal travel expenses alone on the South Florida Produce Credit Cards totaled over $177,000 from January 1, 2024, to November 1, 2024.

**Answer**: Defendants deny the allegations set forth in Paragraph 92.

94. The South Florida Produce Credit Cards were paid for using company funds at the direction of Veneziano.

**Answer**: Defendants admit the allegations set forth in Paragraph 94. Veneziano and his wife were the apparent owners of South Florida Produce and, as such, were the only signatories on South Florida Produce's bank account.

95. At the end of 2022, Veneziano installed a personal cryptocurrency mining operation on Oakes Farm OP property located at 424 E. New Market Ave., Suite 5A, Immokalee, Fl 34142.

**Answer**: Defendants deny the allegations set forth in Paragraph 95.

96. Veneziano funded the entirety of the installation with monies belonging to Oakes Farm OP.

**Answer**: Defendants deny the allegations set forth in Paragraph 96.

97. Veneziano initially conducted the cryptocurrency mining operation from his home, but due to the significant electricity costs and needed investment in the mining operations expansion, Veneziano moved those operations to Oakes Farm OP's property so that Oakes Farm OP would pay for the utilities and investment costs while Veneziano reaped the cash reward.

**Answer**: Defendants deny the allegations set forth in Paragraph 97.

98. To install the mining operation, Veneziano procured thousands of dollars in equipment, including computers, monitors, and cooling fans. Veneziano also hired a third-party electric company to upgrade and install proper outlets on the Oakes Farm OP premises, specifically in a refrigerated tomato storage cooler, to power the crypto mining equipment.

**Answer**: Defendants deny the allegations set forth in Paragraph 98.

99. There was no benefit to Oakes Farm OP of this crypto mining equipment

or the "improvements" made to facilitate it.

**Answer**:  Defendants deny the allegations set forth in Paragraph 99.

100.    Veneziano was not authorized to pursue such activities.

**Answer**: Defendants deny the allegations set forth in Paragraph 100.

101.    Veneziano mined bitcoin and other cryptocurrencies, and Oakes Farm OP absorbed the cost of the operations.

**Answer**:  Defendants deny the allegations set forth in Paragraph 101.

102.    Veneziano kept all of the proceeds from *his* cryptocurrency mining utilizing Oakes Farm OP's property and at Oakes Farm OP's expense.

**Answer**: Defendants deny the allegations set forth in Paragraph 102.

103.    Veneziano also converted a large sum of the funds stolen from Plaintiff into crypto currency.

**Answer**:  Defendants deny the allegations set forth in Paragraph 103.

104.    Veneziano is a known habitual gambler.

**Answer**:  Defendants deny the allegations set forth in Paragraph 104.  Veneziano gambled during the relevant period, often to clean money obtained through Plaintiffs' various fraudulent schemes. Veneziano also used his winnings to pay Plaintiff's business expenses and obligations.

105.    Unfortunately for him, he was not a particularly good gambler. Veneziano owed more than $600,000 to Vincent Cafone and Peter Seldin, members

of an organized crime bookmaking operation in Broward County, Florida.

**Answer**: Defendants admit money was owed to Cafone and Seldin and deny the remaining allegations set forth in Paragraph 105.

106.     The Broward Sheriff's Office found that Veneziano was losing six-figure amounts in single weeks of sports betting.

**Answer**: Defendants do not have sufficient information to admit or deny the allegations set forth in Paragraph 106.

107.     In February 2024, Veneziano wired $601,569 to pay down his gambling debt.  At the same time Veneziano was paying over $600,000 to his bookmakers, Oakes Farms Entities' accounts show large, unusual withdrawals and accounting entries that represent the source of the funds to pay Veneziano's gambling debts.

**Answer**: Defendants deny the allegations set forth in Paragraph 107.

108.     Specifically, South Florida Produce's bank records show that between October 1, 2023, and November 30, 2023, Veneziano wired or withdrew over $755,000 from the South Florida Produce account ending in 7205 to either Veneziano's personal account or one of his entities' account.

**Answer**: Defendants do not have knowledge sufficient to admit or deny the allegations set forth in Paragraph 108.

109.     These transfers were done to accumulate funds to pay Veneziano's gambling debts.

**Answer**:   Defendants deny the allegations as set forth in Paragraph 109.

110.   Veneziano's gambling debt was a clear financial pressure that likely drove Veneziano to steal even more aggressively from Plaintiffs.

**Answer**: Defendants deny the allegations set forth in Paragraph 110.

111.      On November 26, 2023, Veneziano also used his position to unilaterally use South Florida Produce funds to purchase, for his personal use, a brand new 2023 Lincoln Navigator, VIN 5LMJJ2TG9PEL12488 (the "Navigator") for $138,152.49.

**Answer**: Defendant admits the allegations set forth in Paragraph 111 but denies that the purchase was improper. Veneziano and his wife were the sole members of South Florida Produce at the time.

112.      Veneziano financed, in South Florida Produce's name, $133,152.69 of the Navigator purchase price for three years at an interest rate of 1.9%.

**Answer**:  Defendants admit the allegations set forth in Paragraph 112.

113.      Therefore, assuming all payments are made, South Florida Produce will pay a total of approximately $137,160 for the Navigator.

**Answer**: Defendants deny the allegations set forth in Paragraph 113.

114.      Veneziano had no authority to purchase such a vehicle for his personal use nor did Veneziano have a legal interest in South Florida Produce.

**Answer**: Defendants deny the allegations set forth in Paragraph 114.

115.      Veneziano also improperly added his wife and friends to the Oakes

Farms Entities payroll.

**Answer**: Defendants admit the allegations set forth in Paragraph 115. At the direction of Alfie Oakes, Veneziano and others added friends and family to the Oakes Farms Entities' payroll to commit various criminal frauds against the federal government. For example, Alfie Oakes' kiteboarding instructor and cousins, family members of employees, business partners, and friends were added to the payroll to justify employee numbers in applications for funds from the Paycheck Protection Program, a government relief program.

116.    Again, for the sake of clarity, though Veneziano worked himself into a Chief Executive role with Plaintiffs, Veneziano had no ownership interest in any of the Plaintiff entities.

**Answer**: Defendants deny the allegations set forth in Paragraph 116. Veneziano had ownership interest in South Florida Produce.

117.    Therefore, at bottom, any pay increases or hires needed to be properly authorized.  However, these identified new hires were expressly done without authorization.

**Answer**: Defendants deny the allegations set forth in Paragraph 117.

118.    Veneziano used his position within the Oakes Farms Entities to add his wife, Amy Veneziano ("Amy"), and friends Michelle Yeomans ("Yeomans") and Sarah Brown ("Brown") to the South Florida Produce payroll so that they could

receive a paycheck. Neither Amy, Yeomans, or Brown provided any services for South Florida Produce or any of the other Oakes Farms Entities.

**Answer**: Defendants deny the allegations set forth in Paragraph 118. Alfie Oakes, the owner of Oakes Farms, and Oakes Farms CFO, Randy Miller, added Amy Veneziano, and other employees' wives and children, to the payroll to perpetrate fraud against government relief programs. Sarah Brown, a caretaker of Veneziano's children, was added to the payroll so she could assist with Veneziano's special needs children while Veneziano worked over 100 hours per week for Alfie Oakes and Oakes Farms. It was common practice for Oakes' employees to add their wives and children to entities to perpetrate various frauds. Michelle Yeomans, introduced to Veneziano by Alfie Oakes in 2014, was added to the payroll to assist the Oakes Entities in committing millions of dollars in crop insurance fraud.

119.    Amy, Yeomans, and Brown each received over tens of thousands of "wages," combined, from 2022 until 2024 from South Florida Produce for providing zero services.

**Answer**: Defendants do not have knowledge sufficient to admit or deny the allegations as set forth in Paragraph 119.

120.    Once more, Veneziano did not have authority from Plaintiffs to hire Amy, Yeomans, or Brown for any role.

**Answer**: Defendants deny the allegations as set forth in Paragraph 120.

121.    Veneziano has purchased at least 43 Florida Properties between 2015 and 2022 (the "Properties"). The total invested in the Properties was $3.3 million, which is more than 32 years of Veneziano's original base salary. Clearly, the Properties were purchased with funds procured through Veneziano's fraud and theft of Plaintiff's funds.

**Answer**: Defendants deny the allegations set forth in Paragraph 121.

122.    The Properties include:

- 420 22nd Ave NE, Naples, Florida 34120;
- 1063 Countess Ave, Lehigh Acres, Florida 33974;
- 1859 Latham Dr, Lehigh Acres, Florida 33972;
- 1221 Ecstasy St E, Lehigh Acres, Florida 33974;
- 1219 Ecstasy St E, Lehigh Acres, Florida 33974;
- 1873 Murray St, Lehigh Acres, Florida 33972;
- 740 Chestnut St E, Lehigh Acres, Florida 33974;
- 6015 Olive Ave N, Lehigh Acres, Florida 33971;
- 2246/2248 Fairway Dr, Lehigh Acres, Florida 33973;
- 1115 Roosevelt Ave, Lehigh Acres, Florida 33936;
- 37 Diplomat Pkwy W, Cape Coral, Florida 33993;
- 6004 Sara Ave N, Lehigh Acres, Florida 33971;
- 734 Longbow Ln, Lehigh Acres, Florida 33972;
- 1830 League Ave, Lehigh Acres, Florida 33972;
- 500 Meadow Rd, Lehigh Acres, Florida 33973;
- 1206 SW 4th Ln, Cape Coral, Florida 33991;
- 1198 Dixie Ave, Lehigh Acres, Florida 33972;
- 433 Eisenhower Blvd, Lehigh Acres, Florida 33974;
- 2607 Irma Ave N, Lehigh Acres, Florida 33971;
- 854 Palomino St E, Lehigh Acres, Florida 33974;
- 5567 Tamarind Ridge Dr, Naples, Florida 34119;
- 325 Lownde Ave S, Lehigh Acres, Florida 33974;
- 327 Lownde Ave S, Lehigh Acres, Florida 33974;
- 2516/2518 Hawalaska St, Lehigh Acres, Florida 33973;

- 1139 Bayliss St E, Lehigh Acres, Florida 33974;
- 1155 Bayliss St E, Lehigh Acres, Florida 33974;
- 2815 21st SW, Lehigh Acres, Florida 33976;
- 2816 22nd St SW, Lehigh Acres, Florida 33976;
- 801 SW 2nd Ter, Cape Coral Florida 33991;
- 476/478 Bell Blvd S, Lehigh Acres, Florida 33974;
- 1018 SW 4th Ter, Cape Coral, Florida 33991;
- 2300 Hawalaska St, Lehigh Acres, Florida 33973;
- 903 Albert Ave, Lehigh Acres, Florida 33971;
- 2241/2243 Fairway Dr, Lehigh Acres, Florida 33973;
- 108 SW 34th Pl, Cape Coral, Florida 33991;
- 603 SW 8th Pl, Cape Coral, Florida 33991;
- 2520 SW 15th Ave, Cape Coral, Florida 33914;
- 1112 Raymond St E, Lehigh Acres, Florida 33974;
- 378/380 Bell Blvd S, Lehigh Acres, Florida 33974;
- 1121 Rachel St E, Lehigh Acres, Florida 33974;
- 2817 21st St SW, Lehigh Acres, Florida 33976; and
- 2814 22nd St SW, Lehigh Acres, Florida 33976.

**Answer**:  Defendants deny the allegations set forth in Paragraph 122. The Properties were not purchased with any funds procured through Veneziano's fraud and theft of Plaintiff's funds, as Plaintiff never stole any money from Plaintiffs. In December 2020, Alfie Oakes paid Veneziano a $1,000,000 bonus solely for his work the month prior with Oakes Farms.

123.    Veneziano later sold the Properties for a profit, essentially "cleaning" the funds stolen from Plaintiffs.

**Answer**: Defendants deny the allegations set forth in Paragraph 123.

124.    For example, on or around October 24, 2024, Veneziano signed over power of attorney one of his most valuable properties (5567 Tamarind Ridge Dr,

Naples, Florida 34119) to his attorney in Naples, Florida.

**Answer**: Defendants deny the allegations set forth in Paragraph 124. Power of Attorney was provided to Veneziano's attorney in October 2024 because Veneziano was cooperating with the United States Secret Service, IRS-OIG, DCIS, USDA and the United States Attorney's Office in a criminal federal investigation. This cooperation resulted in multiple search warrants being executed on November 7, 2024 at various Oakes Entities. Veneziano fled Florida because he feared for his safety and the safety of his family. A power of attorney was used to facilitate the sale of his home so he did not have to return to Florida and risk his safety.

125.    The Tamarind Ridge Dr property sold for $4,100,000.

**Answer**: Defendants admit to the allegations set forth in Paragraph 125.

126.    The proceeds from all Property sales then went to Veneziano or one of his entities, including Veneziano Farms.

**Answer**: Defendants deny the allegation set forth in Paragraph 126.

127.    Veneziano created various shell companies which he utilized to both facilitate and perpetrate theft from Oakes Farms, Oakes Farm OP, and South Florida Produce

128.    **Answer**: Defendants deny the allegations set forth in Paragraph 127. Randy Miller, the CFO of Oakes Farms, and an attorney created various shell companies at the direction of Alfie Oakes to facilitate and perpetrate fraud on behalf

of Plaintiffs and other Oakes affiliated entities. *See Exhibit F.*

129.     These companies include both Veneziano Farms and Veneziano Property Management.

**Answer**:  Defendants deny the allegations set forth in Paragraph 129.

130.     On July 20, 2018, Veneziano created Veneziano Farms, LLC.

**Answer**: Defendants deny the allegations set forth in Paragraph 130. An Oakes Farms attorney created Veneziano Farms as a straw entity at the direction of Veneziano and Alfie Oakes to facilitate and perpetrate fraud on behalf of Oakes Farms.

131.     Veneziano and his wife Amy are the only members of Veneziano Farms, LLC.

**Answer**: Defendants admit the allegations set forth in Paragraph 131.

132.     Almost immediately, Veneziano began carrying out sophisticated schemes by interfering with Oakes Farms' accounting and delivery records to conceal his appropriation of millions of dollars of cash from Oakes Farms accounts within what appeared to be seemingly legitimate transactions.

**Answer**: Defendants deny the allegations set forth in Paragraph 132. Veneziano began carrying out sophisticated schemes by interfering with Oakes Farms' accounting and delivery records to carry out various fraudulent schemes against the United States government and others at the direction of Alfie Oakes and for the benefit of Oakes Farms.

133.     This included Veneziano sending money to and from Veneziano Farms to Oakes Farm OP.

**Answer**: Defendants deny the allegations set forth in Paragraph 133. Money was sent to and from Veneziano Farms at the direction of Alfie Oakes to defraud the United States government, insurance companies, and others for the benefit Oakes Farms.

134.     For example, from May 19, 2022, to July 14, 2022, Veneziano initiated seven transfers totaling $4,251,260.59 from Oakes Farm OP's account ending in 8813 to Veneziano Farms bank account ending in 8601.

**Answer**: Defendants do not have knowledge sufficient to admit or deny the transactions occurred but deny the allegation that these monies were embezzled or stolen funds from Plaintiffs.

135.     From November 18, 2021, to August 24, 2022, Veneziano initiated fifty-one transfers totaling $6,240,867.50 from Oakes Farm OP to Veneziano Farm's bank account ending in 8601.

**Answer**: Defendants do not have knowledge sufficient to admit or deny the transactions occurred but deny the allegation that these monies were embezzled or stolen funds from Plaintiffs.

136.     Additionally, two checks totaling $675,000.00 were issued to Oakes Farm OP from Veneziano Farms on October 29, 2021, and June 16, 2022.

**Answer**: Defendants do not have knowledge sufficient to admit or deny the transactions occurred but deny the allegation that these monies were embezzled or stolen funds from Plaintiffs.

137. Furthermore, from August 25, 2023, till November of 2024, seven checks totaling $720,085.39 was paid from Oakes Farms Entities to Veneziano Farms.

**Answer**: Defendants do not have knowledge sufficient to admit or deny the transactions occurred but deny the allegation that these monies were embezzled or stolen funds from Plaintiffs.

138. There was no legitimate business reason for these transfers or checks. Veneziano was using Veneziano Farms to assist in his fraud and theft by using it as a conduit to facilitate money in and out of Plaintiffs' bank accounts.

**Answer**: Defendants deny the allegations as set forth in Paragraph 138.

139. Veneziano had no approval for any of the transfer from Plaintiffs' bank accounts to Veneziano Farms.

**Answer**: Defendants deny the allegations as set forth in Paragraph 139.

140. Upon information and belief, there are many more fraudulent transfers via Veneziano Farms. As noted above, however, given the level to which Veneziano went to embezzle funds from Plaintiffs, Plaintiffs and their forensic accountants and auditors continue to locate more funds secreted by Veneziano.

**Answer**: Defendants deny the allegations as set forth in Paragraph 140.

141.    Veneziano, along with his wife Amy, created Veneziano Property Management on May 5, 2021.

**Answer**: Defendants deny the allegations as set forth in Paragraph 141. Veneziano Property Management was created at the direction of Alfie Oakes and Randy Miller for tax reasons.

142.    Veneziano exercised total control over Veneziano Property Management.

**Answer**: Defendants deny the allegations as set forth in Paragraph 142. As a requirement of Veneziano's employment, Alfie Oakes and Oakes Farms mandated that Oakes Farms' CFO file all tax returns for Veneziano Farms, Veneziano Property Management, and all personal tax returns for Veneziano and his wife. At all times, Alfie Oakes had complete control over the funds flowing through his multiple straw entities created to perpetrate fraud against the United States government and others.

143.    Upon information and belief, Veneziano transferred funds stolen from Plaintiff into Veneziano Property Management's bank account for the express purpose of purchasing real properties.

**Answer**: Defendants deny the allegations as set forth in Paragraph 143.

144.    Veneziano Property Management then used the funds stolen from Plaintiffs to purchase the following five real properties (collectively the "Veneziano

Property Management Properties"):

- On May 17, 2021, Veneziano, through Veneziano Property Management, purchased the real property located at 108 SW 34th Pl., Cape Coral, Florida 33991 for $315,000,

- On May 28, 2021, Veneziano, through Veneziano Property Management, purchased the real property located at 603 SW 8th Pl., Cape Coral, Florida 33991 for $214,250,

- On September 17, 2021, Veneziano, through Veneziano Property Management, purchased the real property located at 2520 SW 15th Ave., Cape Coral, Florida 33914 for $194,700,

- On February 28, 2022, Veneziano, through Veneziano Property Management, purchased the real property located at 378/380 Bell Blvd., S Lehigh Acres, Florida 33974 for $20,000, and

- On March 14, 2022, Veneziano, through Veneziano Property Management, purchased the real property located at 1121 Rachel St., E Lehigh Acres, Florida 33974 for $12,800.

**Answer**: Defendants admit the properties were purchased but deny that the properties were purchased with stolen funds from Plaintiffs.

145.    Veneziano Property Management later sold the Veneziano Property Management Properties for a profit, essentially "cleaning" the funds stolen from

Plaintiffs.

**Answer**: Defendants deny the allegations as set forth in Paragraph 145.

146.    Upon information and belief, Veneziano Property Management then transferred the proceeds from the sale of the Veneziano Property Management Properties to Veneziano.

**Answer**: Defendants deny the allegations as set forth in Paragraph 146.

147.    At all relevant times, Veneziano exercised complete domination and control over Veneziano Farms and Veneziano Property Management.

**Answer**: Defendants deny the allegations as set forth in Paragraph 147. Veneziano Farms was a straw entity created at the direction of Alfie Oakes to fraudulently procure government relief program money and engage in crop insurance fraud for the benefit of Oakes Farms and its coconspirators.

148.    Veneziano commingled his personal funds with both Veneziano Farms and Veneziano Property Management, failed to observe corporate formalities, undercapitalized the entities, and used their accounts for personal gain.

**Answer:**  Defendant's deny the allegations as set forth in Paragraph 148.

149.    Veneziano created, operated, and used the Entity Defendants for the improper purpose of facilitating and concealing his fraudulent schemes against Plaintiffs, including diverting Plaintiffs' funds and assets through the Entity Defendants' bank accounts and records.

**Answer**: Defendant's deny the allegations as set forth in Paragraph 149.

150.    Veneziano used both Veneziano Farms and Veneziano Property Management to perpetrate fraud, to mislead Plaintiffs, and to avoid personal liability for his wrongful acts, including but not limited to:

a) Filtering stolen funds through Veneziano Farms and Veneziano Property Management, LLC to disguise personal enrichment as legitimate business transactions;

b) Transferring Plaintiffs' funds to and from Veneziano Farms and Veneziano Property Management;

c) Using Veneziano Farms and Veneziano Property Management to hold and launder real property, equipment, and funds misappropriated from Plaintiffs.

**Answer**: Defendant's deny the allegations as set forth in Paragraph 148.

151.    Both Veneziano Farms and Veneziano Property Management were mere alter egos of Veneziano, dominated and controlled by him to such an extent that adherence to the fiction of their separate corporate existence would sanction fraud, promote injustice, and shield Veneziano from liability for his wrongful acts.

**Answer**: Defendant's deny the allegations as set forth in Paragraph 151.

152.    All conditions precedent to this action have been performed, waived, excused, or otherwise satisfied.

**Answer**:  Defendant's deny the allegations as set forth in Paragraph 152

153.     To prosecute this action, Plaintiffs have retained the undersigned counsel and are obligated to pay undersigned counsel a reasonable fee for their services.

**Answer**:  Defendants do not have knowledge sufficient to admit or deny this statement.

## COUNT I – FRAUDULENT MISREPRESENTATION
### (Oakes Farms against Veneziano)

154.     Oakes Farms realleges paragraphs 1–153 as if fully set forth herein.

**Answer**:  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

155.     Veneziano knowingly made multiple false statements concerning material facts to Oakes Farms and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a) Altering Oakes Farms accounting records to misrepresent that receivables from customers were satisfied;

b) Misrepresenting to Oakes Farms employees that the Company's principals had authorized the cryptocurrency mining operation installed with Oakes Farms funds, when no such authorization was given;

c) Mischaracterizing transfers from Oakes Farms bank accounts to Veneziano's personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges as legitimate business expenses; and

e) Misrepresenting his pay on Oakes Farms' payroll system.

**Answer**: Defendants deny the allegations as set forth in Paragraph 155.

156.    Veneziano made these false representations with knowledge of their falsity and with the intent that Oakes Farms would rely upon them.

**Answer**: Defendants deny the allegations as set forth in Paragraph 156.

157.    Oakes Farm reasonably relied on Veneziano's representations and omissions by permitting him to continue exercising authority over company funds, accounts, and assets.

**Answer**: Defendants deny the allegations as set forth in Paragraph 157.

158.    As a direct and proximate result of such reliance, Oakes Farms suffered damages of approximately $12,500,000 but in an amount to be proven at trial.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 158.

### COUNT II – FRAUDULENT MISREPRESENTATION
### (Oakes Farm OP against Veneziano)

159.    Oakes Farm OP realleges paragraphs 1–153 as if fully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

160.    Defendant Veneziano knowingly made multiple false statements concerning material facts to Oakes Farm OP and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a)  Altering Oakes Farm OP's accounting records to misrepresent that receivables from Valencia Produce, Doug Specialties, and others were satisfied;

b)  Falsely representing that cash withdrawals from Oakes Farm OP's accounts were necessary for cash payments to customers, when Veneziano retained the cash for his own use;

c)  Misrepresenting to Oakes Farm OP's employees that the Company's principals had authorized the cryptocurrency mining operation installed with Oakes Farm OP's funds and Oakes Farm OP's property, when no such authorization was given;

d)  Mischaracterizing transfers from Oakes Farm OP's bank accounts to Veneziano's personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

e)  Misrepresenting personal credit card charges as legitimate business expenses;

and

    f)  Misrepresenting his pay on Oakes Farm OP's payroll system.

**Answer:** Defendants deny the allegations as set forth in Paragraph 160.

161.      Veneziano made these false representations with knowledge of their falsity and with the intent that Oakes Farm OP rely upon them.

**Answer:** Defendants deny the allegations as set forth in Paragraph 161.

162.      Oakes Farm OP reasonably relied on Veneziano's representations and omissions by permitting him to continue exercising authority over company funds, accounts, and assets.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 162.

163.      As a direct and proximate result of such reliance, Oakes Farm OP suffered damages of approximately $12,500,000 but in an amount to be proven at trial.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 163.

**COUNT III – FRAUDULENT MISREPRESENTATION**
**(South Florida Produce against Veneziano)**

164.      South Florida Produce reallege paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

165.    Defendant Veneziano knowingly made multiple false statements concerning material facts to South Florida Produce and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a) Altering South Florida Produce's accounting records to misrepresent that receivables from Valencia Produce, Doug Specialties and others were satisfied;

b) Falsely representing that cash withdrawals from South Florida Produce accounts were necessary for cash payments to Estrada, when in fact Veneziano retained the cash for his own use;

c) Mischaracterizing transfers from South Florida Produce's bank accounts to Veneziano's personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges on the South Florida Produce Credit Cards as legitimate business expenses;

e) Misrepresenting that the Navigator was purchased for legitimate business purposes;

f) Misrepresenting his pay on South Florida Produce's payroll system; and

g) Misrepresenting his wife, Yeomans, and Brown as employees on South Florida Produce's payroll system.

**Answer:** Defendants deny the allegations as set forth in Paragraph 165.

166.    Veneziano made these false representations with knowledge of their falsity and with the intent that South Florida Produce to rely upon them.

**Answer:** Defendants deny the allegations as set forth in Paragraph 166.

167.    South Florida Produce reasonably relied on Veneziano's representations and omissions by permitting him to continue exercising authority over company funds, accounts, and assets.

**Answer:** Defendants deny the allegations as set forth in Paragraph 167.

168.    As a direct and proximate result of such reliance, South Florida Produce suffered damages of approximately $12,500,000 but in an amount to be proven at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 168.

## COUNT IV – CONVERSION
### (Oakes Farms against Veneziano)

169.    Oakes Farms realleges paragraphs 1–153 as if sully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

170.    Oakes Farms had ownership rights and/or superior right of possession to certain property, including but not limited to:

a) Funds belonging to Oakes Farms received from customers in the form of cash

receivables;

b) Cryptocurrency mining equipment purchased with funds stolen from Oakes Farms;

c) Bitcoin and other cryptocurrencies purchased with funds stolen from Oakes Farms; and

d) Company funds charged to Oakes Farms credit cards issued to Veneziano that were used to pay for personal expenses.

**Answer:** The defendants deny the allegations as set forth in Paragraph 170.

171.    Veneziano wrongfully exercised dominion and control over this property by diverting Oakes Farms funds, transferring ownership, using company assets for his personal benefit, and retaining possession of property purchased with Oakes Farms funds.

**Answer:** The defendants deny the allegations as set forth in Paragraph 171.

172.    Veneziano's conduct was unauthorized and inconsistent with Oakes Farm's ownership rights.

**Answer:** The defendants deny the allegations as set forth in Paragraph 172.

173.    As a direct and proximate result, Oakes Farms has been deprived of their property and suffered damages in an amount to be proven at trial.

**Answer:** The defendants deny the allegations as set forth in Paragraph 173.

**COUNT V – CONVERSION**

**(Oakes Farm OP against Veneziano)**

174.    Oakes Farm OP realleges paragraphs 1–153 as if sully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

175.    Oakes Farm OP had ownership rights and/or superior right of possession to certain property, including but not limited to:

a)  Funds belonging to Oakes Farm OP received from Valencia Produce and other customers in the form of cash receivables;

b)  Cryptocurrency mining equipment purchased with funds stolen from Oakes Farm OP, and any resulting cryptocurrency proceeds;

c)  Bitcoin and other cryptocurrencies purchased with funds stolen from Oakes Farm OP; and

d)  Company funds charged to Oakes Farm OP's credit cards issued to Veneziano that were used to pay for personal expenses.

**Answer:**  Defendant deny the allegations set forth in Paragraph 175.

176.    Veneziano wrongfully exercised dominion and control over this property by diverting Oakes Farm OP's funds, transferring ownership, using company assets for his personal benefit, and retaining possession of property purchased with Oakes Farm OP's funds.

**Answer:** Defendants deny the allegations as set forth in Paragraph 176.

177.    Veneziano's conduct was unauthorized and inconsistent with Oakes Farm OP's ownership rights.

**Answer:** Defendants deny the allegations as set forth in Paragraph 177.

178.    As a direct and proximate result, Oakes Farm OP has been deprived of their property and suffered damages in an amount to be proven at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 178.

## COUNT VI – CONVERSION
### (South Florida Produce against Veneziano)

179.    South Florida Produce realleges paragraphs 1–153 as if sully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

180.    South Florida Produce had ownership rights and/or superior right of possession to certain property, including but not limited to:

a) Funds belonging to South Florida Produce received from Valencia Produce and other customers in the form of cash receivables;

b) Cryptocurrency mining equipment purchased with funds stolen from Oakes Farm OP, and any resulting cryptocurrency proceeds;

c) The Navigator purchased for approximately $138,152 with South Florida Produce funds;

d) Funds belonging to South Florida Produce in the amount of approximately $1.7 million, transferred by Defendant Veneziano into his personal bank account between October 2023 and November 2024;

e) Funds belonging to South Florida Produce in the amount of approximately $960,000 withdrawn from company accounts under the false pretense of paying Estrada;

f) Bitcoin and other cryptocurrencies purchased with funds stolen from South Florida Produce; and

g) Company funds charged to the South Florida Produce Credit Cards issued to Veneziano that were used to pay for personal expenses.

**Answer:** Defendants deny the allegations as set forth in Paragraph 180.

181.    Veneziano wrongfully exercised dominion and control over this property by diverting South Florida Produce's funds, transferring ownership, using company assets for his personal benefit, and retaining possession of property purchased with South Florida Produce' funds.

**Answer:** Defendants deny the allegations as set forth in Paragraph 181.

182.    Veneziano's conduct was unauthorized and inconsistent with South Florida Produce's ownership rights.

**Answer:** Defendants deny the allegations as set forth in Paragraph 182.

183.    As a direct and proximate result, South Florida Produce has been

deprived of their property and suffered damages in an amount to be proven at trial.

**Answer**:  Defendants deny the allegations as set forth in Paragraph 183.

## COUNT VII – BREACH OF FIDUCIARY DUTY
### (Oakes Farms against Veneziano)

184.    Oakes Farms realleges paragraphs 1–153 as if sully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

185.    At all relevant times, Defendant Veneziano held positions of trust and responsibility within Oakes Farms, including acting as Oakes Farms *de facto* president and Chief Executive.

**Answer:** Defendants deny the allegations as set forth in Paragraph 185.

186.    Veneziano owed fiduciary duties to Oakes Farms, including but not limited to:

a)  The duty of loyalty, requiring him to put the interests of Oakes Farms above his own personal interests;

b)  The duty of care, requiring Veneziano to manage Oakes Farms corporate assets and affairs prudently and in good faith;

c)  The duty of full disclosure, requiring him to be truthful and transparent about transactions affecting Oakes Farms; and

d)  The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:** Defendants deny the allegations as set forth in Paragraph 186.

187.    Veneziano breached his fiduciary duties by engaging in intentional misconduct and self-dealing, including but not limited to:

a) Misappropriating millions of dollars in Oakes Farms funds by altering accounting records to conceal outstanding receivables and diverting cash payments from third-party retailers;

b) Directing Oakes Farms and other companies to purchase produce from vendors, while diverting delivery to other retailers and pocketing the resulting cash payments;

c) Ordering cash withdrawals under the false pretense of paying a vendor, when in fact Veneziano retained the cash for himself;

d) Using Oakes Farms credit cards issued for business purposes to charge for more than $500,000 in personal expenses, including luxury travel, extravagant dining, gambling, and OnlyFans subscriptions;

e) Establishing and operating a personal cryptocurrency mining operation using Oakes Farms funds and resources to mine the cryptocurrency, while retaining all proceeds for himself; and

f) Concealing his fraudulent activity from Plaintiffs by misrepresenting that is conduct was authorized or legitimate.

**Answer:** Defendants deny the allegations as set forth in Paragraph 187.

188.    Veneziano's actions were intentional, fraudulent, and undertaken in reckless disregard of Oakes Farm's rights and interests.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 185.

189.    As a direct and proximate result of Veneziano's breaches of fiduciary duty, Oakes Farms has suffered damages of approximately $12,500,000, including but not limited to lost funds diverted receivables, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be proven at trial.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 188.

### COUNT VIII – BREACH OF FIDUCIARY DUTY
### (Oakes Farm OP against Veneziano)

190.    Oakes Farm OP realleges paragraphs 1–153 as if sully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

191.    At all relevant times, Defendant Veneziano held positions of trust and responsibility within Oakes Farm OP, including acting as Oakes Farm OP's *de facto* president and Chief Executive.

**Answer:** Defendants deny the allegations as set forth in Paragraph 188.

192.    Veneziano owed fiduciary duties to Oakes Farm OP, including but not limited to:

a)  The duty of loyalty, requiring him to put the interests of Oakes Farm OP above

his own personal interests;

b) The duty of care, requiring Veneziano to manage Oakes Farm OP's corporate assets and affairs prudently and in good faith;

c) The duty of full disclosure, requiring him to be truthful and transparent about transactions affecting Oakes Farm OP; and

d) The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:** Defendants deny the allegations as set forth in Paragraph 192.

193.    Veneziano breached his fiduciary duties by engaging in intentional misconduct and self-dealing, including but not limited to:

a) Misappropriating millions of dollars in Oakes Farm OP's funds by altering accounting records to conceal outstanding receivables and diverting cash payments from third-party retailers;

b) Directing Oakes Farm OP and other companies to purchase produce from vendors, while diverting delivery to other retailers and pocketing the resulting cash payments;

c) Ordering cash withdrawals under the false pretense of paying a vendor, when in fact Veneziano retained the cash for himself;

d) Using Oakes Farms credit cards issued for business purposes to charge for more than $500,000 in personal expenses, including luxury travel, extravagant dining, gambling, and OnlyFans subscriptions;

e) Establishing and operating a personal cryptocurrency mining operation using Oakes Farms funds and resources to mine the cryptocurrency, while retaining all proceeds for himself; and

f) Concealing his fraudulent activity from Plaintiffs by misrepresenting that is conduct was authorized or legitimate.

**Answer:** Defendants deny the allegations as set forth in Paragraph 18 Defendants deny the allegations as set forth in Paragraph 193.

194. Veneziano's actions were intentional, fraudulent, and undertaken in reckless disregard of Oakes Farm's rights and interests.

**Answer:** Defendants deny the allegations as set forth in Paragraph 194.

195. As a direct and proximate result of Veneziano's breaches of fiduciary duty, Oakes Farms has suffered damages of approximately $12,500,000, including but not limited to lost funds diverted receivables, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 195.

### COUNT IX – BREACH OF FIDUCIARY DUTY
### (South Florida Produce against Veneziano)

196. South Florida Produce realleges paragraphs 1–153 as if sully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to

paragraphs 1 through 153 above.

197.    At all relevant times, Defendant Veneziano held positions of trust and responsibility within South Florida Produce, including serving as *de facto* president and chief executive officer of South Florida Produce.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 197.

198.    Veneziano owed fiduciary duties to South Florida Produce, including but not limited to:

a)  The duty of loyalty, requiring him to put the interests of South Florida Produce above his own personal interests;

b)  The duty of care, requiring Veneziano to manage South Florida Produce corporate assets and affairs prudently and in good faith;

c)  The duty of full disclosure, requiring him to be truthful and transparent about transactions affecting South Florida Produce; and

d)  The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 198.

199.    Veneziano breached his fiduciary duties by engaging in intentional misconduct and self-dealing, including but not limited to:

a)  Misappropriating millions of dollars in South Florida Produce's funds by altering accounting records to conceal outstanding receivables and diverting cash payments from third-party retailers;

b) Directing South Florida Produce and other companies to purchase produce from vendors, while diverting delivery to other retailers and pocketing the resulting cash payments;

c) Ordering nearly $1 million in cash withdrawals under the false pretense of paying a vendor, when in fact Veneziano retained the cash for himself;

d) Transferring $1.7 million from South Florida Produce to Veneziano's personal bank accounts under false pretenses such as "Investment in Veneziano";

e) Purchasing a 2023 Lincoln Navigator for his exclusive personal use with funds of South Florida Produce;

f) Using South Florida Produce's credit cards issued for business purposes to charge for more than $500,000 in personal expenses, including luxury travel, extravagant dining, gambling, and OnlyFans subscriptions;

g) Establishing and operating a personal cryptocurrency mining operation using South Florida Produce and resources to mine the cryptocurrency, while retaining all proceeds for himself; and

h) Concealing his fraudulent activity from Plaintiffs by misrepresenting that is conduct was authorized or legitimate.

**Answer:** Defendants deny the allegations as set forth in Paragraph 199.

200.    Veneziano's actions were intentional, fraudulent, and undertaken in reckless disregard of Oakes Farm's rights and interests.

**Answer:** Defendants deny the allegations as set forth in Paragraph 200.

201.    As a direct and proximate result of Veneziano's breaches of fiduciary duty, South Florida Produce has suffered damages of approximately $12,500,000, including but not limited to lost funds diverted receivables, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 201.

### COUNT X – UNJUST ENRICHMENT AND EQUITABLE LIEN
### (Oakes Farms against Veneziano) (In the alternative to Count I)

202.    Oakes Farms realleges paragraphs 1–153 as if sully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

203.    Oakes Farms conferred benefits upon Veneziano by providing funds, assets, equipment, and other property.

**Answer:** Defendants deny the allegations as set forth in Paragraph 203.

204.    Veneziano knowingly accepted and retained these benefits under circumstances that make it inequitable for them to do so without compensating Oakes Farms.

**Answer:** Defendants deny the allegations as set forth in Paragraph 204.

205.    As a direct and proximate result. Oakes Farms has been damaged of

approximately $12,500,000 but in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 205.

206.    Veneziano also occupied positions of trust and had a fiduciary responsibility within Oakes Farms and had access to and control over Oakes Farms' financial accounts and assets.

**Answer:** Defendants deny the allegations as set forth in Paragraph 206.

207.    By virtue of his fiduciary role, Veneziano owed Oakes Farms duties of loyalty, honesty, and full disclosure.

**Answer:** Defendants deny the allegations as set forth in Paragraph 207.

208.    Veneziano abused this position of trust and confidence to misappropriate millions of dollars of Oakes Farms' funds and to acquire assets for his personal benefit.

**Answer:** Defendants deny the allegations as set forth in Paragraph 208.

209.    Veneziano used Oakes Farms' funds to purchase or otherwise obtain identifiable property and assets, including but not limited to:

a)  Funds diverted from Oakes Farms accounts to Veneziano's personal accounts and Veneziano Farms' account.

b)  Cryptocurrency, including bitcoin, and proceeds of cryptocurrency mining conducted with equipment purchased by Oaks Farms.

**Answer:** Defendants deny the allegations as set forth in Paragraph 209.

210.    Veneziano continues to possess, control, or benefit from these assets and their proceeds.

**Answer:**   Defendants deny the allegations as set forth in Paragraph 210.

211.    Equity regards Veneziano as holding the above-described assets in a constructive trust for Oakes Farms, as it would be inequitable for Veneziano to retain the benefit of property obtained through fraud, theft, and abuse of confidence.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 211.

212.    Oakes Farms is entitled to the imposition of a constructive trust or, in the alternative, an equitable lien over the assets wrongfully acquired by Veneziano, in order to ensure restitution to Oakes Farms and to prevent Veneziano's unjust enrichment.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 212.

**COUNT XI – UNJUST ENRICHMENT AND EQUITABLE LIEN**
**(Oakes Farm OP against Veneziano) (In the alternative to Count II)**

213.    Oakes Farm OP realleges paragraphs 1–153 as if sully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

214.    Oakes Farm OP conferred benefits upon Veneziano by providing funds, assets, vehicles, equipment, and other property.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 214.

215.    Veneziano knowingly accepted and retained these benefits under circumstances that make it inequitable for them to do so without compensating Oakes Farm OP.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 215.

216.    As a direct and proximate result. Oakes Farm OP has been damaged of approximately $12,500,000 but in an amount to be determined at trial.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 216.

217.    Veneziano also occupied positions of trust and had a fiduciary responsibility within Oakes Farm OP and had access to and control over Oakes Farm OP's financial accounts and assets.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 217.

218.    By virtue of his fiduciary role, Veneziano owed Oakes Farm OP duties of loyalty, honesty, and full disclosure.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 218.

219.    Veneziano abused this position of trust and confidence to misappropriate millions of dollars of Oakes Farm OP's funds and to acquire assets for his personal benefit.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 219.

220.    Veneziano used Oakes Farm OP's funds to purchase or otherwise obtain identifiable property and assets, including but not limited to:

a) Funds diverted from Oakes Farm OP's accounts to Veneziano's personal accounts and Veneziano Farms' account.

b) Cryptocurrency, including bitcoin, and proceeds of cryptocurrency mining conducted with equipment purchased by Oaks Farm OP.

**Answer:** Defendants deny the allegations as set forth in Paragraph 220.

221.    Veneziano continues to possess, control, or benefit from these assets and their proceeds.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 221.

222.    Equity regards Veneziano as holding the above-described assets in a constructive trust for Oakes Farm OP, as it would be inequitable for Veneziano to retain the benefit of property obtained through fraud, theft, and abuse of confidence.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 222.

223.    Oakes Farm OP is entitled to the imposition of a constructive trust or, in the alternative, an equitable lien over the assets wrongfully acquired by Veneziano, in order to ensure restitution to Oakes Farm OP and to prevent Veneziano's unjust enrichment.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 223.

## COUNT XII – UNJUST ENRICHMENT AND EQUITABLE LIEN
### (South Florida Produce against Veneziano)
### (In the alternative to Count III)

224.    South Florida Produce realleges paragraphs 1–153 as if sully set forth

herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

225. South Florida Produce conferred benefits upon Veneziano by providing funds, assets, vehicles, equipment, and other property.

**Answer:** Defendants deny the allegations as set forth in Paragraph 225.

226. Veneziano knowingly accepted and retained these benefits under circumstances that make it inequitable for them to do so without compensating South Florida Produce.

**Answer:** Defendants deny the allegations as set forth in Paragraph 226.

227. As a direct and proximate result. South Florida Produce has been damaged of approximately $12,500,000 but in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 227.

228. Veneziano also occupied positions of trust and had a fiduciary responsibility within South Florida Produce and had access to and control over South Florida Produce's financial accounts and assets.

**Answer:** Defendants deny the allegations as set forth in Paragraph 228.

229. By virtue of his fiduciary role, Veneziano owed South Florida Produce duties of loyalty, honesty, and full disclosure.

**Answer:** Defendants deny the allegations as set forth in Paragraph 229.

230.    Veneziano abused this position of trust and confidence to misappropriate millions of dollars of South Florida Produce's funds and to acquire assets for his personal benefit.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 230.

231.    Veneziano used South Florida Produce's funds to purchase or otherwise obtain identifiable property and assets, including but not limited to:

a)  The Navigator;

b)  Funds diverted from South Florida's accounts to Veneziano's personal accounts and Veneziano Farms' account; and

c)  Cryptocurrency, including bitcoin, and proceeds of cryptocurrency mining conducted with equipment purchased by South Florida Produce.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 231.

232.    Veneziano continues to possess, control, or benefit from these assets and their proceeds.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 232.

233.    Equity regards Veneziano as holding the above-described assets in a constructive trust for South Florida Produce, as it would be inequitable for Veneziano to retain the benefit of property obtained through fraud, theft, and abuse of confidence.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 233.

234.    South Florida Produce is entitled to the imposition of a constructive trust or, in the alternative, an equitable lien over the assets wrongfully acquired by Veneziano, in order to ensure restitution to Oakes Farms and to prevent Veneziano's unjust enrichment.

**Answer:** Defendants deny the allegations as set forth in Paragraph 234.

### COUNT XIII – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Oakes Farms against Veneziano)

235.    Oakes Farms realleges paragraphs 1–153 as if fully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

236.    Veneziano engaged in trade and commerce as the *de facto* chief executive for the Oakes Farms Entities.

**Answer:** Defendants deny the allegations as set forth in Paragraph 236.

237.    The Florida Deceptive and Unfair Practices Act ("FDUTPA") prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

**Answer:** Defendants deny the allegations as set forth in Paragraph 237.

238.    Oakes Farms is a consumer as defined by Florida Statutes Section 501.203.

**Answer:** Defendants deny the allegations as set forth in Paragraph 238.

239.    Veneziano's conduct constitutes unfair and deceptive trade practices under FDUTPA.

**Answer:** Defendants deny the allegations as set forth in Paragraph 239.

240.    Specifically, Veneziano's conduct was "unfair", "deceptive," and/or "unconscionable" in the conduct of trade and/or commerce in the following ways:

a) Altering Oakes Farms accounting records to misrepresent that receivables from customers were satisfied;

b) Misrepresenting to Oakes Farms employees that the Company's principals had authorized the cryptocurrency mining operation installed with Oakes Farms funds, when no such authorization was given;

c) Mischaracterizing transfers from Oakes Farms bank accounts to Veneziano's personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges as legitimate business expenses; and

e) Misrepresenting his pay on Oakes Farms' payroll system.

**Answer:** Defendants deny the allegations as set forth in Paragraph 240.

241.    As a result of Veneziano's unfair, deceptive, and/or unconscionable practices in the conduct of trade and/or commerce, Oakes Farms has been aggrieved

and has suffered damages of approximately $12,500,000, including but not limited to lost funds diverted receivables, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 241.

242.    Oakes Farms is entitled to actual damages and all other relief allowable under the FDUTPA, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

**Answer:** Defendants deny the allegations as set forth in Paragraph 242.

## COUNT XIV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Oakes Farm OP against Veneziano)

243.    Oakes Farm OP realleges paragraphs 1–153 as if fully set forth herein.

**Answer**:  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

244.    Veneziano engaged in trade and commerce as the *de facto* chief executive for the Oakes Farms Entities.

**Answer:** Defendants deny the allegations as set forth in Paragraph 244.

245.    FDUTPA prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

**Answer:** Defendants deny the allegations as set forth in Paragraph 245.

246.    Oakes Farm OP is a consumer as defined by Florida Statutes Section 501.203.

**Answer:** Defendants deny the allegations as set forth in Paragraph 246.

247.    Veneziano's conduct constitutes unfair and deceptive trade practices under FDUTPA.

**Answer:** Defendants deny the allegations as set forth in Paragraph 247.

248.    Specifically, Veneziano's conduct was "unfair", "deceptive," and/or "unconscionable" in the conduct of trade and/or commerce in the following ways:

a)  Altering Oakes Farm OP's accounting records to misrepresent that receivables from Valencia Produce, Doug Specialties, and others were satisfied;

b) Falsely representing that cash withdrawals from Oakes Farm OP's accounts were necessary for cash payments to customers, when Veneziano retained the cash for his own use;

c) Misrepresenting to Oakes Farm OP's employees that the Company's principals had authorized the cryptocurrency mining operation installed with Oakes Farm OP's funds and Oakes Farm OP's property, when no such authorization was given;

d) Mischaracterizing transfers from Oakes Farm OP's bank accounts to Veneziano's personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

e) Misrepresenting personal credit card charges as legitimate business expenses; and

f) Misrepresenting his pay on Oakes Farm OP's payroll system.

**Answer:** Defendants deny the allegations as set forth in Paragraph 248.

249.     As a result of Veneziano's unfair, deceptive, and/or unconscionable practices in the conduct of trade and/or commerce, Oakes Farm OP has been aggrieved and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 249.

250.     Oakes Farm OP is entitled to actual damages and all other relief allowable under the FDUTPA, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 250.

### COUNT XV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (South Florida Produce against Veneziano)

251.     South Florida Produce realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

252.    Veneziano engaged in trade and commerce as the *de facto* chief executive for the Oakes Farms Entities.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 252.

253.    FDUTPA prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 253.

254.    South Florida Produce is a consumer as defined by Florida Statutes Section 501.203.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 254.

255.    Veneziano's conduct constitutes unfair and deceptive trade practices under FDUTPA.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 255.

256.    Specifically, Veneziano's conduct was "unfair", "deceptive," and/or "unconscionable" in the conduct of trade and/or commerce in the following ways:

a) Altering South Florida Produce's accounting records to misrepresent that receivables from Valencia Produce, Doug Specialties and others were satisfied;

b) Falsely representing that cash withdrawals from South Florida Produce accounts were necessary for cash payments to Estrada, when in fact Veneziano retained the cash for his own use;

c) Mischaracterizing transfers from South Florida Produce's bank accounts to Veneziano's personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges on the South Florida Produce Credit Cards as legitimate business expenses;

e) Misrepresenting that the Navigator was purchased for legitimate business purposes;

f) Misrepresenting his pay on South Florida Produce's payroll system; and

g) Misrepresenting his wife, Yeomans, and Brown as employees on South Florida Produce's payroll system.

**Answer:** Defendants deny the allegations as set forth in Paragraph 256.

257. As a result of Veneziano's unfair, deceptive, and/or unconscionable practices in the conduct of trade and/or commerce, South Florida Produce has been aggrieved and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 257.

258. South Florida Produce is entitled to actual damages and all other relief allowable under the FDUTPA, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

**Answer:** Defendants deny the allegations as set forth in Paragraph 258.

## COUNT XVI – VIOLATION OF THE FLORIDA CIVIL RICO ACT/CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, SECTION 772.104, FLORIDA STATUTES
### (Oakes Farms against Veneziano)

259.     Oakes Farms realleges paragraphs 1–153 as if fully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

260.     This action is instituted under Sections 772.103(1) and 772.104(1), Florida Statutes, as well as based on the definitions and activity described in Section 895.01 et al. ("Offenses Concerning Racketeering and Illegal Debts.")

**Answer:** Defendants admit this action was instituted under Florida Statutes.

261.     Veneziano, with criminal intent, received proceeds derived, both directly and indirectly, from a pattern of criminal activity as defined in Section 772.103(1).

**Answer:** Defendants deny the allegations as set forth in Paragraph 261.

262.     This pattern of Veneziano's criminal activity includes: (1) embezzlement of Oakes Farms funds; and (2) money laundering by knowingly conducting financial transactions which involve the proceeds of Veneziano's unlawful activity, specifically the embezzlement of Oakes Farms' funds, knowing the transactions were designed in whole or in part to conceal and disguise the nature,

location, source, ownership and control of the proceeds of said specified unlawful activity.

**Answer:** Defendants deny the allegations as set forth in Paragraph 262.

263. As a direct and proximate result of the aforesaid criminal activity, Oakes Farms has been aggrieved and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 263.

264. Pursuant to 772.104(1), Florida Statutes, Oakes Farms is also entitled to threefold or treble damages plus its reasonable attorneys' fees and court costs.

**Answer:** Defendants deny the allegations as set forth in Paragraph 264.

## COUNT XVII – VIOLATION OF THE FLORIDA CIVIL RICO ACT/CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, SECTION 772.104, FLORIDA STATUTES
### (Oakes Farm OP against Veneziano)

265. Oakes Farm OP realleges paragraphs 1–153 as if fully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

266. This action is instituted under Sections 772.103(1) and 772.104(1), Florida Statutes, as well as based on the definitions and activity described in Section

895.01 et al.  ("Offenses Concerning Racketeering and Illegal Debts.")

**Answer:** Defendants admit that this purports to be an action under the statutes cited, but deny sufficiency of same.

267.    Veneziano, with criminal intent, received proceeds derived, both directly and indirectly, from a pattern of criminal activity as defined in Section 772.103(1).

**Answer:**  Defendants deny the allegations as set forth in Paragraph 267.

268.    This pattern of Veneziano's criminal activity includes: (1) embezzlement of Oakes Farm OP's funds; and (2) money laundering by knowingly conducting financial transactions which involve the proceeds of Veneziano's unlawful activity, specifically the embezzlement of Oakes Farm OP's funds, knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 268.

269.    As a direct and proximate result of the aforesaid criminal activity, Oakes Farm OP has been aggrieved and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 269.

270.    Pursuant to 772.104(1), Florida Statutes, Oakes Farm OP is also entitled to threefold or treble damages plus its reasonable attorneys' fees and court costs.

**Answer:** Defendants deny the allegations as set forth in Paragraph 270.

## COUNT XVIII – VIOLATION OF THE FLORIDA CIVIL RICO ACT/CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, SECTION 772.104, FLORIDA STATUTES
### (South Florida Produce against Veneziano)

271.    South Florida Produce realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

272.    This action is instituted under Sections 772.103(1) and 772.104(1), Florida Statutes, as well as based on the definitions and activity described in Section 895.01 et al.  ("Offenses Concerning Racketeering and Illegal Debts.")

**Answer:**    Defendants admit that this purports to be an action under the statutes cited, but deny sufficiency of same.

273.    Veneziano, with criminal intent, received proceeds derived, both directly and indirectly, from a pattern of criminal activity as defined in Section 772.103(1).

**Answer:**  Defendants deny the allegations as set forth in Paragraph 273.

274.     This pattern of Veneziano's criminal activity includes: (1) embezzlement of South Florida Produce's funds; and (2) money laundering by knowingly conducting financial transactions which involve the proceeds of Veneziano's unlawful activity, specifically the embezzlement of South Florida Produce's funds, knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity.

**Answer:** Defendants deny the allegations as set forth in Paragraph 274.

275.     As a direct and proximate result of the aforesaid criminal activity, South Florida Produce has been aggrieved and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 275.

276.     Pursuant to 772.104(1), Florida Statutes, South Florida Produce is also entitled to threefold or treble damages plus its reasonable attorneys' fees and court costs.

**Answer:** Defendant admits that the Florida Statutes entitle treble damages and reasonable attorneys' fees and costs.

## COUNT XIV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Oakes Farms against Veneziano Farms)

277.     Oakes Farms realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

278.     At all relevant times, Defendant Veneziano held positions of trust and responsibility within Oakes Farms, including acting as Oakes Farms *de facto* president and Chief Executive.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 278.

279.     Veneziano owed fiduciary duties to Oakes Farms, including but not limited to:

a)  The duty of loyalty, requiring him to put the interests of Oakes Farms above his own personal interests;

b)  The duty of care, requiring Veneziano to manage Oakes Farms corporate assets and affairs prudently and in good faith;

c)  The duty of full disclosure, requiring him to be truthful and transparent about transactions affecting Oakes Farms; and

d)  The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 279.

280.     At all times material hereto, Veneziano Farms had actual knowledge of

Veneziano's breaches of fiduciary duty and provided substantial assistance or encouragement for Veneziano's defrauding of Oakes Farms.

**Answer:** Defendants deny the allegations as set forth in Paragraph 280.

281.    Veneziano Farms had actual knowledge and provided substantial assistance towards Veneziano's breaches of fiduciary duty because Veneziano utilized Veneziano Farms' bank account ending in 6355 to perpetuate his embezzlement of Oakes Farms' funds.

**Answer:** Defendants deny the allegations as set forth in Paragraph 281.

282.    Oakes Farms has been damaged by Veneziano Farms' aiding and abetting Veneziano's breaches of fiduciary duty and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 282.

## COUNT XV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Oakes Farm OP against Veneziano Farms)

283.    Oakes Farm OP realleges paragraphs 1–153 as if fully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

284.    At all relevant times, Defendant Veneziano held positions of trust and

responsibility within Oakes Farm OP, including acting as Oakes Farm OP's *de facto* president and Chief Executive.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 284.

285.    Veneziano owed fiduciary duties to Oakes Farm OP, including but not limited to:

a)  The duty of loyalty, requiring him to put the interests of Oakes Farm OP above his own personal interests;

b) The duty of care, requiring Veneziano to manage Oakes Farm OP's corporate assets and affairs prudently and in good faith;

c)  the duty of full disclosure, requiring him to be truthful and transparent about transactions affecting Oakes Farm OP; and

d)  The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:** Defendants deny the allegations as set forth in Paragraph 285.

286.    At all times material hereto, Veneziano Farms had actual knowledge of Veneziano's breaches of fiduciary duty and provided substantial assistance or encouragement for Veneziano's defrauding of Oakes Farm OP.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 286.

287.    Veneziano Farms had actual knowledge and provided substantial assistance towards Veneziano's breaches of fiduciary duty because Veneziano utilized Veneziano Farms' bank account ending in 6355 to perpetuate his

embezzlement of Oakes Farm OP's funds.

**Answer:** Defendants deny the allegations as set forth in Paragraph 287.

288.     Oakes Farm OP has been damaged by Veneziano Farms' aiding and abetting Veneziano's breaches of fiduciary duty and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendants deny the allegations as set forth in Paragraph 288.

### COUNT XVI – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
#### (South Florida Produce against Veneziano Farms)

289.     South Florida Produce realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

290.     At all relevant times, Defendant Veneziano held positions of trust and responsibility within South Florida Produce, including acting as South Florida Produce's *de facto* president and Chief Executive.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 290.

291.     Veneziano owed fiduciary duties to South Florida Produce, including but not limited to:

a) The duty of loyalty, requiring him to put the interests of South Florida Produce above his own personal interests;

b) The duty of care, requiring Veneziano to manage South Florida Produce's corporate assets and affairs prudently and in good faith;

c) The duty of full disclosure, requiring him to be truthful and transparent about transactions affecting South Florida Produce; and

d) The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:** Defendants deny the allegations as set forth in Paragraph 291.

292. At all times material hereto, Veneziano Farms had actual knowledge of Veneziano's breaches of fiduciary duty and provided substantial assistance or encouragement for Veneziano's defrauding of South Florida Produce.

**Answer:** Defendants deny the allegations as set forth in Paragraph 292.

293. Veneziano Farms had actual knowledge and provided substantial assistance towards Veneziano's breaches of fiduciary duty because Veneziano utilized Veneziano Farms' bank account ending in 6355 to perpetuate his embezzlement of South Florida Produce's funds.

**Answer:** Defendants deny the allegations as set forth in Paragraph 293.

294. South Florida Produce has been damaged by Veneziano Farms' aiding and abetting Veneziano's breaches of fiduciary duty and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds,

unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:**    Defendants deny the allegations as set forth in Paragraph 28 Defendants deny the allegations as set forth in Paragraph 294.

## COUNT XVII – AIDING AND ABETTING
## BREACH OF FIDUCIARY DUTY
### (Oakes Farms against Veneziano Property Management)

295.    Oakes Farms realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

296.    At all relevant times, Defendant Veneziano held positions of trust and responsibility within Oakes Farms, including acting as Oakes Farm's *de facto* president and Chief Executive.

**Answer:**  Defendants deny the allegations as set forth in Paragraph 296.

297.    Veneziano owed fiduciary duties to Oakes Farms, including but not limited to:

a)  The duty of loyalty, requiring him to put the interests of Oakes Farms above his own personal interests;

b)  The duty of care, requiring Veneziano to manage Oakes Farms corporate assets and affairs prudently and in good faith;

c)  The duty of full disclosure, requiring him to be truthful and transparent about

transactions affecting Oakes Farms; and

d) The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:** Defendant denies the allegations as set forth in Paragraph 297.

298.     At all times material hereto, Veneziano Property Management had actual knowledge of Veneziano's breaches of fiduciary duty and provided substantial assistance or encouragement for Veneziano's defrauding of Oakes Farms.

**Answer:** Defendant denies the allegations as set forth in Paragraph 298.

299.     Veneziano Property Management had actual knowledge and provided substantial assistance towards Veneziano's breaches of fiduciary duty because Veneziano Property Management purchased the Properties using funds that were embezzled from Oakes Farms.

**Answer:** Defendant denies the allegations as set forth in Paragraph 299.

300.     Oakes Farms has been damaged by Veneziano Property Management's aiding and abetting Veneziano's breaches of fiduciary duty and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, monies earned from selling the Properties, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendant denies the allegations as set forth in Paragraph 300.

## COUNT XVIII – AIDING AND ABETTING
## BREACH OF FIDUCIARY DUTY
### (Oakes Farm OP against Veneziano Property Management)

301.    Oakes Farm OP realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above

302.    At all relevant times, Defendant Veneziano held positions of trust and responsibility within Oakes Farm OP, including acting as Oakes Farm OP's *de facto* president and Chief Executive.

**Answer:**  Defendant denies the allegations as set forth in Paragraph 302.

303.    Veneziano owed fiduciary duties to Oakes Farm OP, including but not limited to:

a)  The duty of loyalty, requiring him to put the interests of Oakes Farm OP above his own personal interests;

b)  The duty of care, requiring Veneziano to manage Oakes Farm OP's corporate assets and affairs prudently and in good faith;

c)  The duty of full disclosure, requiring him to be truthful and transparent about transactions affecting Oakes Farm OP; and

d)  The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:**    Defendant denies the allegations as set forth in Paragraph 303.

304.    At all times material hereto, Veneziano Property Management had

actual knowledge of Veneziano's breaches of fiduciary duty and provided substantial assistance or encouragement for Veneziano's defrauding of Oakes Farm OP.

**Answer:**  Defendant denies the allegations as set forth in Paragraph 304.

305.    Veneziano Property Management had actual knowledge and provided substantial assistance towards Veneziano's breaches of fiduciary duty because Veneziano Property Management purchased the Properties using funds that were embezzled from Oakes Farm OP.

**Answer:** Defendant denies the allegations as set forth in Paragraph 305.

306.    Oakes Farm OP has been damaged by Veneziano Property Management's aiding and abetting Veneziano's breaches of fiduciary duty and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, monies earned from selling the Properties, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:**  Defendant denies the allegations as set forth in Paragraph 306.

**COUNT XIX – AIDING AND ABETTING**
**BREACH OF FIDUCIARY DUTY**
**(South Florida Produce against Veneziano Property Management)**

307.    South Florida Produce realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to

paragraphs 1 through 153 above.

308.    At all relevant times, Defendant Veneziano held positions of trust and responsibility within South Florida Produce, including acting as South Florida Produce's *de facto* president and Chief Executive.

**Answer:** Defendant denies the allegations as set forth in Paragraph 308.

309.    Veneziano owed fiduciary duties to South Florida Produce, including but not limited to:

a)  The duty of loyalty, requiring him to put the interests of South Florida Produce above his own personal interests;

b)  The duty of care, requiring Veneziano to manage South Florida Produce's corporate assets and affairs prudently and in good faith;

c)  The duty of full disclosure, requiring him to be truthful and transparent about transactions affecting South Florida Produce; and

d)  The duty to refrain from self-dealing and usurping corporate opportunities.

**Answer:** Defendant denies the allegations as set forth in Paragraph 309.

310.    At all times material hereto, Veneziano Property Management had actual knowledge of Veneziano's breaches of fiduciary duty and provided substantial assistance or encouragement for Veneziano's defrauding of South Florida Produce.

**Answer:**        Defendant denies the allegations as set forth in Paragraph 310.

311.    Veneziano Property Management had actual knowledge and provided

substantial assistance towards Veneziano's breaches of fiduciary duty because Veneziano Property Management purchased the Properties using funds that were embezzled from South Florida Produce.

**Answer:** Defendant denies the allegations as set forth in Paragraph 311.

312.     South Florida Produce has been damaged by Veneziano Property Management's aiding and abetting Veneziano's breaches of fiduciary duty and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, monies earned from selling the Properties, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:**  Defendant denies the allegations as set forth in Paragraph 312.

**COUNT XX – AIDING AND ABETTING FRAUDULENT MISREPRESENTATION**
**(Oakes Farms against Veneziano Farms)**

313.     Oakes Farms realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference theirs responses to paragraphs 1 through 153 above.

314.     Veneziano knowingly made multiple false statements to Oakes Farms and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a) Altering Oakes Farms accounting records to misrepresent that receivables from customers were satisfied;

b) Misrepresenting to Oakes Farms employees that the Company's principals had authorized the cryptocurrency mining operation installed with Oakes Farms funds, when no such authorization was given;

c) Mischaracterizing transfers from Oakes Farms bank accounts to Veneziano's personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges as legitimate business expenses; and

e) Misrepresenting his pay on Oakes Farms' payroll system.

**Answer:** Defendant denies the allegations as set forth in Paragraph 314.

315.    At all times material hereto, Veneziano Farms had actual knowledge of Veneziano's fraudulent misrepresentations and provided substantial assistance or encouragement for Veneziano's defrauding of Oaks Farms.

**Answer:**  Defendant denies the allegations as set forth in Paragraph 315.

316.    Veneziano Farms had actual knowledge and provided substantial assistance towards Veneziano's fraudulent misrepresentations because Veneziano utilized Veneziano Farms' bank account ending in 6355 to perpetuate his embezzlement of Oakes Farms' funds.

**Answer:** Defendant denies the allegations as set forth in Paragraph 316.

317.    Oakes Farms has been damaged by Veneziano Farms' aiding and abetting Veneziano's fraudulent misrepresentations and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:**  Defendant denies the allegations as set forth in Paragraph 295. Defendant denies the allegations as set forth in Paragraph 317.

### COUNT XXI – AIDING AND ABETTING FRAUDULENT MISREPRESENTATION
### (Oakes Farm OP against Veneziano Farms)

318.    Oakes Farm OP realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference theirs responses to paragraphs 1 through 153 above.

319.    Veneziano knowingly made multiple false statements to Oakes Farm OP and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a)  Altering Oakes Farm OP's accounting records to misrepresent that receivables from customers were satisfied;

b) Misrepresenting to Oakes Farm OP's employees that the Company's

principals had authorized the cryptocurrency mining operation installed with Oakes Farm OP's funds, when no such authorization was given;

c) Mischaracterizing transfers from Oakes Farm OP's bank accounts to Veneziano's personal bank accounts and Veneziano Farms' bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges as legitimate business expenses; and

e) Misrepresenting his pay on Oakes Farm OP's payroll system.

**Answer:** Defendant denies the allegations as set forth in Paragraph 319.

320. At all times material hereto, Veneziano Farms had actual knowledge of Veneziano's fraudulent misrepresentations and provided substantial assistance or encouragement for Veneziano's defrauding of Oaks Farm OP.

**Answer:** Defendant denies the allegations as set forth in Paragraph 320.

321. Veneziano Farms had actual knowledge and provided substantial assistance towards Veneziano's fraudulent misrepresentations because Veneziano utilized Veneziano Farms' bank account ending in 6355 to perpetuate his embezzlement of Oakes Farm OP's funds.

**Answer:** Defendant denies the allegations as set forth in Paragraph 321.

322. Oakes Farm OP has been damaged by Veneziano Farms' aiding and abetting Veneziano's fraudulent misrepresentations and has suffered damages of

approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendant denies the allegations as set forth in Paragraph 322.

### COUNT XXII – AIDING AND ABETTING FRAUDULENT MISREPRESENTATION
### (South Florida Produce against Veneziano Farms)

323.    South Florida Produce realleges paragraphs 1–153 as if fully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

324.    Veneziano knowingly made multiple false statements to South Florida Produce and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a) Altering South Florida Produce's accounting records to misrepresent that receivables from Valencia Produce, Doug Specialties and others were satisfied;

b) Falsely representing that cash withdrawals from South Florida Produce accounts were necessary for cash payments to Estrada, when in fact Veneziano retained the cash for his own use;

c) Mischaracterizing transfers from South Florida Produce's bank accounts to

Veneziano's personal bank accounts and Veneziano Farms' bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges on the South Florida Produce Credit Cards as legitimate business expenses;

e) Misrepresenting that the Navigator was purchased for legitimate business purposes;

f) Misrepresenting his pay on South Florida Produce's payroll system; and

g) Misrepresenting his wife, Yeomans, and Brown as an employee on South Florida Produce's payroll system.

**Answer:** Defendant denies the allegations as set forth in Paragraph 324.

325.    At all times material hereto, Veneziano Farms had actual knowledge of Veneziano's fraudulent misrepresentations and provided substantial assistance or encouragement for Veneziano's defrauding of South Florida Produce.

**Answer:** Defendant denies the allegations as set forth in Paragraph 325.

326.    Veneziano Farms had actual knowledge and provided substantial assistance towards Veneziano's fraudulent misrepresentations because Veneziano utilized Veneziano Farms' bank account ending in 6355 to perpetuate his embezzlement of South Florida Produce's funds.

**Answer:** Defendant denies the allegations as set forth in Paragraph 326.

327.    South Florida Produce has been damaged by Veneziano Farms' aiding

and abetting Veneziano's fraudulent misrepresentations and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendant denies the allegations as set forth in Paragraph 327.

### COUNT XXIII – AIDING AND ABETTING FRAUDULENT MISREPRESENTATION
### (Oakes Farms against Veneziano Property Management)

328.     Oakes Farms realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

329.     Veneziano knowingly made multiple false statements to Oakes Farms and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a) Altering Oakes Farms accounting records to misrepresent that receivables from customers were satisfied;

b) Misrepresenting to Oakes Farms employees that the Company's principals had authorized the cryptocurrency mining operation installed with Oakes Farms funds, when no such authorization was given;

c) Mischaracterizing transfers from Oakes Farms bank accounts to Veneziano's

personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges as legitimate business expenses; and

e) Misrepresenting his pay on Oakes Farms' payroll system.

**Answer:** Defendant denies the allegations as set forth in Paragraph 329.

330.    At all times material hereto, Veneziano Property Management had actual knowledge of Veneziano's fraudulent misrepresentations and provided substantial assistance or encouragement for Veneziano's defrauding of Oaks Farms.

**Answer:** Defendant denies the allegations as set forth in Paragraph 330.

331.    Veneziano Property Management had actual knowledge and provided substantial assistance towards Veneziano's fraudulent misrepresentations because Veneziano Property Management purchased the Properties using funds that were embezzled from Oakes Farms.

**Answer:**  Defendant denies the allegations as set forth in Paragraph 331.

332.    Oakes Farms has been damaged by Veneziano Property Management's aiding and abetting Veneziano's fraudulent misrepresentations and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:**  Defendant denies the allegations as set forth in Paragraph 332.

## COUNT XXIV – AIDING AND ABETTING FRAUDULENT MISREPRESENTATION
### (Oakes Farm OP against Veneziano Property Management)

333.     Oakes Farm OP realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**   Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

334.     Veneziano knowingly made multiple false statements to Oakes Farm OP and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a)  Altering Oakes Farm OP's accounting records to misrepresent that receivables from customers were satisfied;

b) Misrepresenting to Oakes Farm OP's employees that the Company's principals had authorized the cryptocurrency mining operation installed with Oakes Farms funds, when no such authorization was given;

c) Mischaracterizing transfers from Oakes Farm OP's bank accounts to Veneziano's personal bank accounts and Veneziano Farm's bank accounts as legitimate business transactions when they were not;

d)  Misrepresenting personal credit card charges as legitimate business expenses; and

e) Misrepresenting his pay on Oakes Farm OP's payroll system.

**Answer:** Defendant denies the allegations as set forth in Paragraph 334.

335.    At all times material hereto, Veneziano Property Management had actual knowledge of Veneziano's fraudulent misrepresentations and provided substantial assistance or encouragement for Veneziano's defrauding of Oaks Farm OP.

**Answer:** Defendant denies the allegations as set forth in Paragraph 335.

336.    Veneziano Property Management had actual knowledge and provided substantial assistance towards Veneziano's fraudulent misrepresentations because Veneziano Property Management purchased the Properties using funds that were embezzled from Oakes Farm OP.

**Answer:** Defendant denies the allegations as set forth in Paragraph 336.

337.    Oakes Farm OP has been damaged by Veneziano Property Management's aiding and abetting Veneziano's fraudulent misrepresentations and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendant denies the allegations as set forth in Paragraph 337.

### COUNT XXV – AIDING AND ABETTING FRAUDULENT MISREPRESENTATION
### (South Florida Produce against Veneziano Property Management)

338.     South Florida Produce realleges paragraphs 1–153 as if fully set forth herein.

**Answer:**  Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

339.     Veneziano knowingly made multiple false statements to South Florida Produce and engaged in deceptive acts and omissions, including altering accounting records, falsifying invoices, concealing outstanding receivables, and misrepresenting the purpose of transfers including but not limited to:

a) Altering South Florida Produce's accounting records to misrepresent that receivables from Valencia Produce, Doug Specialties and others were satisfied;

b) Falsely representing that cash withdrawals from South Florida Produce accounts were necessary for cash payments to Estrada, when in fact Veneziano retained the cash for his own use;

c) Mischaracterizing transfers from South Florida Produce's bank accounts to Veneziano's personal bank accounts and Veneziano Farms' bank accounts as legitimate business transactions when they were not;

d) Misrepresenting personal credit card charges on the South Florida Produce Credit Cards as legitimate business expenses;

e) Misrepresenting that the Navigator was purchased for legitimate business purposes;

f) Misrepresenting his pay on South Florida Produce's payroll system; and

g) Misrepresenting his wife, Yeomans, and Brown as employees on South Florida Produce's payroll system.

**Answer:** Defendant denies the allegations as set forth in Paragraph 339.

340.    At all times material hereto, Veneziano Property Management had actual knowledge of Veneziano's fraudulent misrepresentations and provided substantial assistance or encouragement for Veneziano's defrauding of South Florida Produce.

**Answer:** Defendant denies the allegations as set forth in Paragraph 340.

341.    Veneziano Property Management had actual knowledge and provided substantial assistance towards Veneziano's fraudulent misrepresentations because Veneziano Property Management purchased the Properties using funds that were embezzled from South Florida Produce.

**Answer:** Defendant denies the allegations as set forth in Paragraph 341.

342.    South Florida Produce has been damaged by Veneziano Property Management's aiding and abetting Veneziano's fraudulent misrepresentations and has suffered damages of approximately $12,500,000, including but not limited to the embezzled funds, unauthorized expenses, monies earned from selling the Properties,

and property wrongfully retained by Veneziano in an amount to be determined at trial.

**Answer:** Defendant denies the allegations as set forth in Paragraph 342.

### COUNT XXVI – ALTER EGO
### (Plaintiffs against Veneziano Farms, LLC)

343.    Plaintiffs reallege paragraphs 1–153 as if fully set forth herein.

**Answer:** Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above.

344.    At all relevant times, there existed a unity of interest and ownership between Veneziano and Veneziano Farms such that the separate personalities of the individual and the entity did not exist.

**Answer:** Defendant denies the allegations as set forth in Paragraph 344.

345.    Factors demonstrating unity of interest and ownership include: (a) commingling of funds and assets; (b) diversion of company assets for personal use; (c) failure to maintain adequate capitalization; (d) failure to maintain separate books, records, and bank accounts; (e) failure to observe limited liability company formalities; and (f) domination and control by Veneziano over day-to-day operations and finances for personal ends.

**Answer:** Defendants deny the allegations set forth in Paragraph 345.

346.    An inequitable result will follow because recognizing the company's

separate existence would allow Veneziano to avoid liability for obligations incurred to Plaintiffs and would sanction fraud or promote injustice.

**Answer:** Defendant denies the allegations as set forth in Paragraph 346.

347.    Under the alter ego doctrine, the veil of limited liability of Veneziano Farms should be pierced, and Veneziano should be held liable, jointly and severally with Veneziano Farms, for the obligations owed to Plaintiffs arising from his fraud and the conduct alleged in Counts I – XXV of this Amended Complaint.

**Answer:**  Defendants deny the allegations set forth in Paragraph 347.

### COUNT XXVII – ALTER EGO
### (Plaintiffs against Veneziano Property Management, LLC)

348.    Plaintiffs reallege paragraphs 1–153 as if sully set forth herein.

**Answer:**   Defendants reassert and incorporate by reference their responses to paragraphs 1 through 153 above

349.    At all relevant times, there existed a unity of interest and ownership between Veneziano and Veneziano Property Management, LLC, such that the separate personalities of the individual and the entity did not exist.

**Answer:** Defendants deny the obligations set forth in Paragraph 349.

350.    Factors demonstrating unity of interest and ownership include: (a) commingling of funds and assets; (b) diversion of company assets for personal use; (c) failure to maintain adequate capitalization; (d) failure to maintain separate

books, records, and bank accounts; (e) failure to observe limited liability company formalities; and (f) domination and control by Veneziano over day-to-day operations and finances for personal ends.

**Answer:** Defendants deny the obligations set forth in Paragraph 350.

351.    An inequitable result will follow because recognizing the company's separate existence would allow Veneziano to avoid liability for obligations incurred to Plaintiffs and would sanction fraud or promote injustice.

**Answer:** Defendants deny the obligations set forth in Paragraph 351.

352.    Under the alter ego doctrine, the veil of limited liability of Veneziano Property Management should be pierced, and Veneziano should be held liable, jointly and severally with Veneziano Property Management, for the obligations owed to Plaintiffs arising from his fraud and the conduct alleged in Counts I – XXV of this Amended Complaint, including but not limited to using funds procured by Veneziano's fraud to purchase and sell real properties.

**Answer:** Defendants deny the obligations set forth in Paragraph 352.

WHEREFORE, Defendants deny Plaintiffs are entitled to any of the damages sought, seeks dismissal of the action and an award of attorneys' fees and costs to the fullest extent permitted by law.

All allegations not expressly admitted above are hereby denied.

## AFFIRMATIVE DEFENSES

1.      As their First Affirmative Defense, Defendants state that Plaintiffs' claims are barred by the doctrine of unclean hands.  Any and all actions Veneziano undertook, through his position at the Oakes Farms Entities was done at the direction of Alfie Oakes, the owner of Oakes Farms, who directed and/or facilitated the creation of numerous straw entities to employ sophisticated schemes to defraud the United States government, insurance companies, business partners, and civil litigants adverse to Plaintiffs.

2.      As their Second Affirmative Defense, Defendants asserts that Plaintiffs fail to state a claim against Veneziano Farms and Veneziano Property Management because Plaintiffs fail to adequately allege, and cannot prove, that the Veneziano Corporate Entities were created *after* Veneziano committed the alleged acts that constituted the purported embezzlement *and* that he used those corporate entities to avoid his own personal liability.

3.      As their Third Affirmative Defense, Defendants asserts that Plaintiffs fail to state a claim under FDUPTA because the transactions alleged in the Amended Complaint are not consumer or trade transaction, Plaintiffs are not statutory consumers, Defendants and Plaintiffs are not competitors in the marketplace, and the practices complained of to be in violation of FDUPTA are not alleged to have actual market-wide harm or anticompetitive effect.

4.      As their Fourth Affirmative Defense, Defendants asserts that Plaintiffs' claims are barred by the doctrine of waiver. All actions undertook by Defendants was at the express direction of Alfie Oakes, the principal of Plaintiffs.

5.      As their Fifth Affirmative Defense, Defendants asserts that Plaintiffs' claims are barred by the doctrine of ratification. Plaintiffs knew of the actions alleged in this action of which they now complain, and Plaintiffs approved them, or accepted the benefits of the actions. Specifically, all actions undertook by Defendants was at the express direction of Alfie Oakes, the principal of Plaintiffs.

6.      As their Sixth Affirmative Defense, Defendants asserts that South Florida Produce LLC lacks standing to bring the claims its assert. Veneziano is the true owner of South Florida Produce LLC and he did not authorize the filing of the instant suit.

7.      Defendants reserve the right to amend their affirmative defenses as additional defenses may be revealed in discovery.

Respectfully submitted,

By:  __s/Susan V. Warner_____
Susan V. Warner
Fla. Bar No. 38205
susan.warner@pierferd.com
PIERSON FERDINAND LLP
333 SE 2nd Avenue, Suite 2000
Miami, Florida 33131
Tel:   (786) 310-0637

Fax:   (786) 524-0260
*Attorneys for Defendants*

By: __s/Nicole Hughes Waid_____
Nicole Hughes Waid
Fla. Bar No. 0121720
PIERSON FERDINAND LLP
4830 W. Kennedy Blvd., Suite 600
Tampa, FL 33609
nicole.waid@pierferd.com
PIERSON FERDINAND LLP
Tel:   (202) 906-9572
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of May, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____s/Susan V. Warner_____
Susan V. Warner

**SERVICE LIST**
**OAKES FARMS, INC. et al. vs. STEVEN A. VENEZIANO, JR. et al.**
**CASE NO: 2:25-cv-1126 -SPC-NPM**
**United States District Court, Middle District of Florida**

Joseph A. Davidow, Esq.
WILLIS & DAVIDOW, LLC
9015 Strada Stell Court, #106
Naples, FL 34109
JDavidow@WillisDavidow.com
cwidener@willisdavidow.com
*Counsel for Plaintiffs*
*Service via CM/ECF*

Jordan A. Shaw
jshaw@shawlewenz.com
Zachary D. Ludens
zludens@shawlewenz.com
Lauren N. Palen
lpalen@shawlewenz.com
SHAW LEWENZ
110 SE 6th Street, Suite 2900
Fort Lauderdale, FL 33301
*Counsel for Plaintiffs*
*Service via CM/ECF*